RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2404-15T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF E.B. – SVP-724-15.
_____________________________________

 Submitted October 10, 2017 – Decided November 17, 2017

 Before Judges Accurso and O'Connor.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Docket No. SVP-
 724-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant E.B. (Nancy C. Hayes,
 Designated Counsel, on the brief).1

 Christopher S. Porrino, Attorney General,
 attorney for respondent State of New Jersey
 (Melissa H. Raksa, Assistant Attorney
 General, of counsel; Amy Beth Cohn, Deputy
 Attorney General, on the brief).

PER CURIAM

1
 E.B. filed a supplemental "pro se" brief a week after the
State filed its brief. We have not considered this brief
because it was neither authorized under our Court Rules, see
Rule 2:6-11(d), nor by order.
 E.B. appeals from the January 16, 2016 judgment committing

him to the Special Treatment Unit (STU) pursuant to the Sexually

Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.

Following our review of the record and applicable legal

principles, we reverse and remand for a new hearing.

 I

 In 1992, E.B. pled guilty to second-degree sexual assault,

N.J.S.A. 2C:14-2(c)(1). He was sentenced to an eight-year term

of imprisonment, subject to a four-year period of parole

ineligibility. In addition, he was sentenced to Community

Supervision for Life (CSL) and ordered to register under Megan's

Law. During the plea colloquy, E.B. stated he, along with other

men, participated in a gang attack upon a group of young girls

at a public swimming pool. E.B. admitted he vaginally

penetrated one of the girls in the pool. The victim was less

than sixteen but older than thirteen years of age; E.B. was

twenty-two years old at the time.

 In 2002, E.B. pled guilty to second-degree sexual assault,

N.J.S.A. 2C:14-2(b). It is not disputed E.B. fondled the

breasts and buttocks of an eleven-year old female and engaged in

several sexually-explicit telephone conversations with her. He

was sentenced to a ten-year term at the Adult Diagnostic and

Treatment Center (ADTC), subject to a five-year period of parole

 2 A-2404-15T5
ineligibility. At the time of his sentence, he had been

convicted of ten indictable offenses, including the two sexual

offenses to which he pled guilty.

 In 2008, E.B. was released from ADTC. In an ADTC

"Termination Report," two psychologists stated E.B. understood

his deviant arousal pattern and offending dynamics, and had

developed coping mechanisms to deal with high risk situations.

An addendum to the "Termination Report" stated that although

objective testing suggested E.B. was at high risk for

reoffending, from a clinical perspective his overall risk of

committing a sexual offense was substantially reduced by the

significant gains he had achieved in treatment, indicating he

had adequate resources to avoid sexually reoffending. The

psychologists recommended that upon his discharge, E.B. "avoid"

children.

 There is reference in the record to E.B. being charged with

violating the terms of CSL in 2010, for which he was sentenced

to an eighteen-month term of imprisonment. The record does not

reveal how he violated the terms of CSL, but he was not

convicted of a sexual offense. There is also reference to his

violating the terms of CSL in 2011. Again, the record does not

reflect how he violated the terms of CSL or the disposition of

 3 A-2404-15T5
this violation, but there is no indication the violation was

related to committing a sexual offense.

 In 2015, the State filed a petition seeking to have E.B.

involuntarily committed under the SVPA because various police

reports indicated E.B. contacted or attempted to have contact

with eight adolescent girls from October 2009 to April 2014.

According to these reports, the alleged victims told the police

E.B. followed or approached them as they walked down the street,

and attempted to engage them in conversation. He posed

questions to some victims, which included asking their name,

age, telephone number, whether the girl was a virgin, engaged in

oral sex, or would have sex with him. Some complained he drove

up to and cut off their path in order to speak to them.

 In July 2014, E.B. pled guilty to violating CSL on the

grounds he initiated contact with one of the girls and for

failing to notify the police of a change of address. The record

is somewhat unclear, but it appears E.B. admitted he was in a

van and called out to a girl on a sidewalk from his vehicle,

stating, "Yo little girl, come here, come here." The girl did

not allege E.B. engaged in conduct different from what he

admitted. Defendant was sentenced in the aggregate to eighteen

months in prison. Defendant was not convicted of any other

 4 A-2404-15T5
offense in connection with his alleged contacts with underage

females after his release from the ADTC.

 While serving his sentence, E.B. submitted to a

psychological examination, and scored a +6 on the "Static-99"

test. According to the evaluator, this score indicated E.B. was

at high risk for committing a sexual offense. The evaluator

recommended E.B. be referred to the appropriate deputy attorney

general to assess whether he should be recommitted as a sexually

violent predator.

 Following a civil commitment hearing in January 2016, the

court entered an order involuntarily committing E.B. to the STU.

At the hearing, a psychiatrist and psychologist testified on

behalf of the State. In addition, various documents, including

the written reports of the psychiatrist and psychologist, were

admitted. Defendant did not call any witnesses or seek to

introduce any documentary evidence. The principal testimony by

psychiatrist Roger Harris, M.D. is as follows.

 In addition to interviewing E.B. for an hour, Harris

testified he reviewed presentence reports, clinical

certificates, ADTC reports, and prior forensic evaluations;

however, Harris did not state he relied upon any of these

documents to form his opinions. But, as addressed below, Harris

relied on the aforementioned police reports to form his opinion

 5 A-2404-15T5
E.B. is afflicted with antisocial personality disorder and is at

high risk for reoffending and, thus, should be involuntarily

committed.

 Harris acknowledged that, in 2008, the ADTC determined E.B.

could be released from the STU, but in Harris's opinion E.B.'s

conduct after he was released, as reflected by the subject

police reports, was inconsistent with the ADTC's finding he was

at low risk for reoffending. According to Harris, the police

reports revealed E.B. pursued teenage girls after his release

from the ADTC and attempted to "lure them, attempt[ed] to have

contact with them, and [was] sexually explicit with them[.]"

Harris noted that, even though E.B. was unsuccessful in

attaining any physical contact with any of the girls,

 I don't think it was his intent to fail
 . . . . So the fact [he] did not end up,
 that we know of, having contact, I don't
 think is the . . . decisive issue at all
 when he has already been convicted for
 underage girls and he is engaging in the
 behavior to gain access. . . . The intent,
 I think, is clearly to have sexual contact
 with them, not to . . . just have a
 conversation with them and drive off.

 Harris acknowledged E.B. denied engaging in any of the

conduct alleged in the police reports, except for the one

incident when he called out to the girl on a sidewalk and

stated, "Yo little girl, come here, come here."

 6 A-2404-15T5
 Harris diagnosed E.B. with paraphilia for teenage girls

because, despite his two convictions for sexual assault and the

sanctions resulting from such convictions, he continued to

pursue young girls for sexual purposes after his release from

the ADTC, as documented in the subject police reports. In his

opinion E.B. took "great risks" when he pursued these girls,

which is evidence E.B. has "very strong deviant arousal" that he

cannot control.

 Harris further opined E.B. has severe antisocial

personality disorder, a diagnosis Harris based upon E.B.'s

prolonged inability to conform his conduct to societal norms, as

evidenced by all of his convictions, not just those which were

sexually related. In addition, Harris noted E.B. had a score of

six on the Static-99 test. According to Harris, this score, his

anti-social personality disorder, and paraphilia for teenage

girls makes it highly likely E.B. will sexually reoffend unless

confined to a STU.

 Nicole Paolillo, Psy.D., also testified. She interviewed

E.B. for an hour and appears to have reviewed the same documents

as Harris, including the police reports pertaining to E.B.'s

contacts with the subject teenage girls after his discharge from

the ADTC. Paolillo testified she found E.B.'s "sexual offending

behavior" significant because of its duration and persistence,

 7 A-2404-15T5
commenting such behavior started in 1991 and last occurred in

2014. She stated the fact he is afflicted with antisocial

personality disorder and experiences deviant arousal increases

the risk he will reoffend. The "Psychopathy Checklist–Revised"

test she administered to him revealed E.B. is in the "high range

of psychopathic traits," and his Static-99 score also indicates

he is at high risk for committing a sexual offense.

 Paolillo testified the treatment E.B. received at the ADTC

was ineffective, "otherwise he wouldn't have so many new charges

for committing sexually . . . deviant acts or behaving in a way

that was expressing a desire to act upon a deviant arousal." In

her report, admitted into evidence, she stated given his conduct

with underage girls after his release from ADTC, E.B. "continues

to fall victim to his deviant arousal and antisocial thinking."

 Paolillo also diagnosed E.B. as having paraphilic disorder

because of his arousal to teenagers, antisocial personality

disorder, and cannabis use disorder. She opined E.B. is

predisposed to commit sexually violent acts and, based upon the

record and her interview of him, is highly likely to engage in

future deviant sexual acts if released into the community.

 Based upon the experts' testimony, the court determined

there was clear and convincing evidence E.B. suffers from a

mental abnormality (paraphilia), antisocial personality

 8 A-2404-15T5
disorder, and a substance abuse disorder. The court found these

afflictions, either individually or in combination, put E.B. at

high risk for engaging in acts of sexual violence and, thus,

E.B. had to be committed.

 The court explained it took into account the 1992 and 2002

convictions for sexual offenses, "the conduct relied on by the

experts in making their opinions[,]" and the admissions E.B.

made to his probation officer. These admissions are those E.B.

made when he pled guilty to violating the terms of CSL in 2014.

 II

 On appeal, E.B. asserts the following argument for our

consideration:

 POINT I: THE STATE FAILED TO PROVE BY CLEAR
 AND CONVINCING EVIDENCE THAT [E.B.] IS A
 SEXUALLY VIOLENT PREDATOR AND THAT THE RISK
 OF FUTURE RECIDIVISM IS AT A SUFFICIENTLY
 HIGH LEVEL TO JUSTIFY CONTINUED CIVIL
 COMMITMENT UNDER THE CURRENT TREATMENT PLAN

 In his brief, E.B. clarifies his primary argument is Harris

and Paolillo's opinions are based upon incompetent evidence,

specifically, the subject police reports. E.B. notes the

allegations in the police reports were never substantiated,

except for the claim in which he admits he yelled to a girl in

the street, "Yo, little girl, come here, come here." Therefore,

E.B. contends, the court erred when it found the State provided

 9 A-2404-15T5
sufficient proof to justify his commitment. E.B. also argues

the bases for the experts' conclusion he suffered from

antisocial personality disorder were inadequate.

 Under the SVPA, an involuntary civil commitment may be

ordered following an offender's service of a sentence, or other

criminal disposition, if he or she "suffers from a mental

abnormality or personality disorder that makes the person likely

to engage in acts of sexual violence if not confined in a secure

facility for control, care and treatment." N.J.S.A. 30:4-27.26.

At a commitment hearing, the State must prove by clear and

convincing evidence the individual poses:

 a threat to the health and safety of others
 because of the likelihood of his or her
 engaging in sexually violent acts[,] . . .
 by demonstrating that the individual has
 serious difficulty in controlling sexually
 harmful behavior such that it is highly
 likely that he or she will not control his
 or her sexually violent behavior and will
 reoffend.

 [In re Commitment of W.Z., 173 N.J. 109, 130
 (2002); see also In re Civil Commitment of
 J.H.M., 367 N.J. Super. 599, 608 (App. Div.
 2003), certif. denied, 179 N.J. 312 (2004);
 N.J.S.A. 30:4-27.32(a).]

 Our Supreme Court recently emphasized an appellate court's

review of a commitment under the SVPA "is extremely narrow." In

re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting

In re D.C., 146 N.J. 31, 58 (1996)). We must "give deference to

 10 A-2404-15T5
the findings of our trial judges because they have the

'opportunity to hear and see the witnesses and to have the

"feel" of the case, which a reviewing court cannot enjoy.'"

Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Moreover, "[t]he judges who hear SVPA cases generally are

'specialists' and 'their expertise in the subject' is entitled

to 'special deference.'" Ibid. (quoting In re Civil Commitment

of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)).

Therefore, a trial court's determination is accorded substantial

deference, and may "be modified only if the record reveals a

clear mistake." D.C., supra, 146 N.J. at 58.

 Under the SVPA, "[i]f the court finds by clear and

convincing evidence that the person needs continued involuntary

commitment as a sexually violent predator, it shall issue an

order authorizing the involuntary commitment of the person to a

facility designated for the custody, care and treatment of

sexually violent predators." N.J.S.A. 30:4-27.32(a). Three

requirements must be satisfied to classify a person as a

sexually violent predator:

 (1) the individual has been convicted of a
 sexually violent offense; (2) he suffers
 from a mental abnormality or personality
 disorder; and (3) as a result of his
 psychiatric abnormality or disorder, "it is
 highly likely that the individual will not

 11 A-2404-15T5
 control his or her sexually violent behavior
 and will reoffend."

 [R.F., supra, 217 N.J. at 173 (citations
 omitted) (quoting W.Z., supra, 173 N.J. at
 130); see also N.J.S.A. 30:4-27.26
 (enumerating the three requirements).]

 There is no dispute E.B. has been convicted of a sexually

violent offense. He pled guilty to second-degree sexual assault

in 1992 and in 2002. The question is whether he has antisocial

personality disorder and, as a result of this disorder, is

highly likely to engage in sexually violent behavior and

reoffend. E.B. contends because the experts largely base their

opinions upon the unproven allegations contained in the police

reports, the State has failed to prove he is highly likely to

reoffend. We agree.

 To the extent an expert's opinion rests on inaccurate or

disputed facts, the expert's reliance is unreasonable. In re

Civil Commitment of A.E.F., 377 N.J. Super. 473, 489-91 (App.

Div.), certif. denied, 185 N.J. 393 (2005). When an expert

relies on such information, the expert undermines the foundation

for and, therefore, the evidential worth of his or her opinion.

Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 8-9 (App.

Div.), certif. denied, 165 N.J. 523 (2000).

 For that reason, in In re A.E.F., this court noted serious

questions would be raised if an expert's opinion supporting a

 12 A-2404-15T5
commitment depends upon unproven allegations of sexual offenses.

377 N.J. Super. at 490. We noted if an unproven allegation

provides "a significant building block" in an expert's opinion,

"it would present a troubling issue since significant state

action, such as SVPA commitment, cannot and should not be based

on unproven allegations of misconduct." Ibid.

 Here, the record demonstrates unproven allegations served

as "significant building blocks" in both experts' opinions.

Specifically, their opinions finding E.B. had antisocial

personality disorder and a present propensity to commit acts of

sexual violence if not committed to the STU were based on

unproven allegations of E.B.'s contact with teenage girls after

his discharge from the ADTC. Both accorded considerable weight

to the victims' allegations despite the absence of evidence

verifying such claims, with the exception of the one in which

E.B. admitted calling out to a girl on a sidewalk in the manner

described above. As to this one proven allegation, there is no

evidence the experts believed E.B.'s conduct on this one

occasion was sufficient to conclude he was highly likely to

reoffend.

 Accordingly, the trial court's conclusion the State proved

by clear and convincing evidence commitment is warranted under

the SVPA is unsupported by the record. The experts' opinions

 13 A-2404-15T5
are not supported by competent evidence, a deficiency warranting

a remand and a new hearing to assess E.B.'s current condition

and risk of sexual violence.

 The January 16, 2016 judgment is reversed and the matter

remanded for further proceedings consistent with this opinion.

 14 A-2404-15T5