763 A.2d 747 (2000)
John C. WILLIAMS, Appellant,
v.
NEW JERSEY STATE PAROLE BOARD, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 2000.
Decided June 6, 2000.
*748 J. Michael Blake, Assistant Deputy Public Defender, argued the cause for appellant (Ivelisse Torres, Public Defender, attorney; Mr. Blake, of counsel and on the brief).
Gregory A. Spellmeyer, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel, Mr. Spellmeyer, on the brief).
Appellant filed a pro se supplemental brief.
Before Judges PRESSLER, CIANCIA and ARNOLD.
The opinion of the court was delivered by ARNOLD, J.A.D.
Appellant inmate John C. Williams appeals from a September 8, 1998, decision of respondent, New Jersey State Parole Board (Parole Board) denying him parole and establishing an eighteen-month Future Eligibility Term (FET) and from the April 27, 1999 denial of his request for reconsideration of that decision. We reverse finding that the Parole Board's decision is not supported by substantial credible evidence.
The relevant facts are as follows. In February 1993, appellant pleaded guilty to sexual assault (second-degree) upon a ten-year-old girl, N.J.S.A. 2C:14-2b, pursuant to a plea agreement in which the State recommended a ten-year sentence with no period of parole ineligibility and the dismissal of other charges including endangering the welfare of that same child as a result of the same incident and three *749 counts of criminal attempt to commit escape. The latter charges resulted from appellant's attempts to escape from the Mercer County Detention Center. In one such incident, he removed ceiling tiles and climbed into a ceiling space. In another instance, he attempted to escape by using a pile of clothes to resemble a dummy in his bunk. Both attempts were unsuccessful. On March 6, 1995, appellant was sentenced to a ten-year sentence with no parole ineligibility. He was not sentenced to the Adult Diagnostic and Treatment Center because a psychological evaluation found that he was not eligible for sentencing under the purview of the New Jersey Sex Offender Act.
Significantly, in April 1996, a psychological evaluation by Dr. Leland D. Mosby concluded that appellant was "psychologically appropriate for ... parole ... does not present any major thought disorder" and "did not present a current assault risk." In May 1996, appellant was released on parole. In October 1997, some seventeen months later, he was arrested as a parole violator because he had failed to obtain approval for a change in his residence and employment and had failed to comply with the registration provisions of Megan's Law.
On November 26, 1997, the Adult Panel of the Parole Board revoked his parole. Prior to making that decision, a final revocation hearing had been held before Hearing Officer Diane M. Formica, who issued a report dated November 20, 1997, which recommended that appellant "be continued on parole to ISSP."[1] Hearing Officer Formica found that appellant had moved without first notifying his parole officer, but she also noted that "[this] move was subsequently approved by parole and he did register with the local police, four days past the deadline" set by Megan's Law.
Hearing Officer Formica found that the change of employment led to the parole violation proceedings. Appellant did not tell his parole office of his new employment at a health center as a full-time maintenance worker, that the center was unaware of his criminal record and he "had access to areas of the facility where minors were housed." Formica noted "there was no hint of misconduct reported during his tenure. The concern, however, was subject failed to report this employment to either the Bureau or the Center." In mitigation, Formica noted that appellant readily admitted that he did not tell his parole officer of his employment at the health center because he feared he would lose his job. Specifically, Formica's report read in pertinent part as follows:
In mitigation, subject readily admitted he did not tell his Parole Officer about the employment for fear his record would be discovered and he would lose his job; an eventuality which ultimately came true. Subject expressed remorse for his behavior. He asked the Board to consider the progress he has made over the last 17 months; namely, he moved from a placement situation with no money to an apartment with a job. He paid off his fines, got married on 08/30/97 (reason why he moved), complied with reporting directives under the auspice of ISSP and produced no positive urines.
The Parole Officer agreed ISSP worked for this individual, however, the deceit shown here cannot be taken lightly.
In examining the record, this Hearing Officer finds subject seriously violated parole by failing to notify the Parole Officer and the Henry J. Austin Center of his situation. However, the progress subject made over the last 17 months cannot be ignored. This Hearing Officer believes the Bureau acted responsibly when they interrupted subject's parole with the filing of the parole warrant. It is hoped this interruption was enough to send a message *750 to this individual that deceitful behavior will not be tolerated.
It is therefore recommended subject be continued on parole to ISSP on the condition that any further surreptitious acts will result in revocation proceedings.
The Adult Panel of the Parole Board rejected the Hearing Officer's recommendation that appellant's parole be continued. It found that appellant had violated two conditions of his parole; first, the condition which required him to obtain approval for any change in residence and employment and, second, the condition requiring compliance with Megan's Law. The Panel concluded that "[a]fter reviewing the case, the panelists deem revocation to be desirable at this time." Appellant was given a twelve-month future eligibility term. His next parole hearing was scheduled for May 1998.
In April 1998, the Parole Board began to prepare to evaluate appellant for parole eligibility. The Department of Corrections forwarded reports on appellant's special activities, housing, work and education/vocation. The housing and work reports rated appellant as average with regard to personal hygiene, required supervision, and ability to work with others and excellent with regard to work attendance. The special activities and education/vocation reports indicated that appellant had not participated in any programs. The Parole Board's case assessment noted that appellant had been previously released on parole status, his parole status had been revoked for "technical" violations of his residence address and lack of compliance with Megan's Law, that he had been infraction free since being returned to institutional custody, but he had not participated in any programs. It also noted that he had obtained a residence for release on parole, but had not obtained employment.
On July 10, 1998, appellant's eligibility for parole was deferred pending the completion of an in depth psychological evaluation. The psychological evaluation was completed on August 3, 1998 by Dr. Don E. Gibbons, Ph.D. Based upon his assessment and evaluation, Dr. Gibbons concluded that "as long as Williams refuses to accept responsibility for his anti-social acts, he will be unable to progress in his rehabilitation and will remain a danger to society." He also concluded that appellant "is an extremely manipulative individual... in need of one-to-one counseling plus rehabilitation groups such as Behavior Modification and coping skills in order to develop better insight into the dynamics of his own behavior, and ways to assume responsibility for and control over his actions." Finally, Dr. Gibbons wrote that appellant's "prognosis for parole appears extremely guarded at the present time, when and if parole is granted, the inmate should be closely monitored, with urine monitoring and individual psychotherapy for his conduct disorder." However, Dr. Gibbons report does not even mention the April 1996 evaluation by Dr. Mosby which concluded that appellant was "psychologically appropriate for ... parole ... does not present any major thought disorder" and "did not present a current assault risk" or that during the seventeen-month period when defendant was on parole, he committed no crimes and reported as directed.
A parole hearing was held on September 5, 1998. Appellant was denied parole and told "to try and get into one of our counseling and behavior modification programs towards your criminal behavior when you're clear as to your activities that were involved in this sexual assault." One Board member stated that the confidential professional report "puts some serious professional concerns on your ability to to succeed successfully on parole." A second Board member told appellant he needed to ask for counseling "but our staff is going to put you on the top of the list." She also indicated that due to the psychological report, "there is nothing we can do. We would be negligent if weif we did not keep you in for a few months so that you could get what you needed." On September *751 8, 1998, the Board issued its decision denying parole and establishing an eighteen-month future eligibility term. The decision also stated, that one of the reasons for denial was appellant's prior criminal record. That was an inaccurate statement. He had no prior criminal record. Two mitigating factors were also noted. They were that appellant had been infraction free and received average to above average institutional reports. On December 30, 1998, the panel denied appellant's request for reconsideration. On April 27, 1999, the panel again affirmed the decision, but amended the notice of decision to "reflect the removal of the notation that the defendant had a prior criminal record."[2]
Preliminarily, we note that because defendant was serving a sentence for an offense committed before August 18, 1997, the issue before us is governed by the standard in N.J.S.A. 30:4-123.53a and 30:4-123.56c prior to the amendment of those statutes on that date. N.J.A.C. 10A:71-3.10.[3] Before August 18, 1997, N.J.S.A. 30:4-123.53a and 30:4-123.56c provided that when an inmate becomes eligible for parole, the Parole Board may deny parole release if it appears from a preponderance of the evidence that "there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time."[4] Because Parole Board determinations are "highly individualized discretionary appraisals," a decision of the Board concerning an inmates suitability for parole under this standard should not be reversed by a court unless found to be arbitrary ... or an abuse of discretion. Trantino v. New Jersey State Parole Board, 154 N.J. 19, 25, 711 A.2d 260 (1998). We further recognize that the question whether there is a substantial likelihood an inmate would commit another crime if released is essentially factual in nature, and that judicial review is limited to determining whether the Parole Board's "factual finding could reasonably have been reached on sufficient credible evidence in the whole record." Id. at 24, 711 A.2d 260 (quoting New Jersey State Parole Board v. Cestari, 224 N.J.Super. 534, 547, 540 A.2d 1334 (App. Div.), certif. denied, 111 N.J. 649, 546 A.2d 558 (1988)). In addition we recognize that the standard for parole release "requires that it be demonstrated that the inmate has attained a level of rehabilitation that can assure there is no likelihood that he or she will engage in criminal conduct if released on parole." Trantino, supra, 154 N.J. at 44, 711 A.2d 260. Furthermore, psychological evidence may support a determination of inadequate rehabilitation indicating a likelihood of recidivism. Id. at 33, 711 A.2d 260. We agree with respondent that the Parole Board may also consider whether the inmate has sincerely avowed responsibility for his crime. Id. at 38, 711 A.2d 260. See also Thompson v. New Jersey State Parole Board, 210 N.J.Super. 107, 115, 509 A.2d 241 (App. Div.1986). Certainly, a dangerous prisoner should not be released into the community. In re Hawley, 98 N.J. 108, 114, 484 A.2d 684 (1984).
Nevertheless, our review of the record establishes that it does not contain sufficient credible evidence that appellant would commit another crime if released. During the seventeen months when he was released on parole, appellant did not commit another crime and "complied with reporting directives under the auspice of ISSP and produced no positive urines." The Hearing Officer's report confirms that *752 appellant successfully completed the ISSP program run by the Bureau of Parole. Appellant has not been charged with violating Megan's Law. The Hearing Officer noted that "there was no hint of misconduct reported" when appellant was employed at the Health Center. Simply stated, appellant functioned in society as a supervised parolee with no indication of "antisocial character" or "polysubstance abuse." Cf. Trantino, supra, 154 N.J. at 31, 711 A.2d 260. Clearly, appellant's previous behavior while on parole does not support any finding of a likelihood that he would commit a new crime if released. Nor did the psychological test results which Dr. Gibbons reported as follows:

Test Results: On the Shipley Institute of Living Scale, Mr. Williams' scores placed him in the lowest range of average adult intelligence, barely missing a diagnosis of mild mental retardation.
On the Minnesota Multiphasic Personality Inventory, Mr. Williams'"L" or "Lie" scale score was equivalent to a "T" score of 83, which is often suggestive of naive and unsophisticated individuals who are attempting to create a very favorable impression of themselves. A "Lie" scale score in this range strongly suggests that the remainder of the profile is invalid, and that interpretive hypotheses based on clinical scale scores in the remainder of the profile have a very high probability of being inaccurate.

Clinical Impressions: Mr. Williams appears to be operating under the assumption that he can obtain an early release by concentrating on the details of administrative paperwork and report writing rather than by working on his rehabilitation. In the opinion of the present writer, his highly implausible explanations of the circumstances leading to his present charges strain the credibility of most readers, and are consistent with his psychological test performance as that of a naive and unsophisticated individual who is attempting to create a very favorable impression of himself.
Dr. Gibbons' opinion in his report, which does not even mention Dr. Mosby's earlier findings or the seventeen-month period when defendant was on parole and living in the community, is entirely without foundation and is contradicted by the empirical evidence. It does not provide sufficient credible evidence to deny parole.
There is one final matter we must note. According to the Parole Board's case assessment dated May 12, 1998, appellant will have served his maximum term on March 28, 2001, that date calculated, we assume, on the basis of the good time he has earned. He was thus, on the date this appeal was argued, less than a year away from his mandatory release date. We further point out that that mandatory release date will be reached one month prior to expiration of the future parole eligibility term of twenty months imposed in October 1999. It appears, therefore, that the Parole Board has determined that appellant must serve his full ten-year sentence. Nothing in this record justifies that decision.
The determination denying defendant parole is reversed. Defendant is entitled to immediate release on parole, and we remand to the Parole Board to fix the terms and conditions of his release. The remand proceedings shall be completed within twenty days after the date of this opinion.
NOTES
[1] ISSP refers to Intensive Surveillance and Supervision Parole, a program run by the Bureau of Parole of the Department of Corrections.
[2] Subsequent to the filing of this appeal, appellant again became eligible for parole. On or about October 7, 1999, he was again denied parole and directed to serve an additional twenty months.
[3] In respondent's brief, the Attorney General conceded that it is the standard contained in those statutes before the August 18, 1997 amendments that determines whether appellant should have been released on parole.
[4] The August 19, 1997 amendments were intended to grant the Parole Board greater discretion in these matters. Assembly Law and Public Safety Committee Statement to Assembly, No. 21 (1997).