**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0285-17T1

JEFFREY SALUKA,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

          Submitted January 15, 2019 – Decided February 1, 2019

          Before Judges Suter and Geiger.

          On appeal from the New Jersey State Parole Board.

          Jeffrey Saluka, appellant pro se.

          Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Jeffrey Saluka, incarcerated at South Woods State Prison, appeals from an August 23, 2017 final agency decision of the New Jersey State Parole Board (Board) denying him parole and establishing a ninety-six-month future eligibility term (FET). We affirm.

These are the facts. On December 17, 1989, police found a brutally beaten two-year old boy in respiratory arrest in a motel room occupied by Saluka and the child's mother. Attempts at cardio-pulmonary resuscitation were unsuccessful. The child was transported to the hospital and pronounced dead a short time later. According to the medical examiner, the cause of death was massive internal bleeding and abdominal wall hematomas caused by blunt force trauma. The child also suffered multiple abrasions and contusions to the head, torso, and extremities, cerebral edema, and pulmonary edema.

Saluka was charged with aggravated manslaughter, manslaughter, and endangering the welfare of a child. On January 8, 1990, Saluka, while out on bail, threatened to kill the child's mother and grandmother. He was subsequently arrested and charged with terroristic threats. Saluka was later charged with robbery and aggravated assault related to a July 11, 1990 incident in which the victim was beaten unconscious.

On February 11, 1991, Saluka pleaded guilty to a downgraded charge of harassment for his threats against the child's mother and grandmother. On April 12, 1991, Saluka pleaded guilty to aggravated assault for the July 11, 1990 incident. On June 3, 1991, he was sentenced to a seven-year term on the aggravated assault and to fifty days on the harassment. On February 28, 1992, a jury convicted Saluka of aggravated manslaughter and endangering the welfare of a child, and the court sentenced him to an extended term of life imprisonment, subject to a twenty-five year period of parole ineligibility, to run consecutively to his other sentences.

Saluka had prior adult convictions for aggravated assault, simple assault, possession of a prohibited weapon, and burglary. He was on probation for these convictions when he committed his present offenses, and was sentenced to an eighteen-month term for violation of probation. Saluka also has an extensive juvenile record.

Saluka has been continuously incarcerated since 1990. He has committed five institutional offenses during his incarceration, including three serious "asterisk" infractions. His most recent infraction was committed in May 2013.

A mental health evaluation was performed August 23, 2016. The psychologist concluded Saluka was a medium to high risk for future violence

3

and the likelihood he would successfully complete a projected term of parole was fair to poor. Saluka's Level of Service Inventory-Revised (LSI-R) evaluation score was 27, placing him at a medium risk for recidivism.

Saluka first became eligible for parole on March 4, 2017. On November 3, 2016, a parole hearing officer referred the case to a Board panel for a hearing. The two-member Board panel denied parole on January 17, 2017, determining there was a substantial likelihood he "would commit a new crime if released on parole at this time." The panel referred the case to a three-member panel for establishment of a FET that may be in excess of the Board's presumptive schedule. Among other reasons, the panel found Saluka demonstrated insufficient problem resolution, showed no insight or remorse for his violent behavior, and needed to address his anger and rage.

The three-member panel determined the following factors supporting the denial of parole were of such a serious nature as to warrant the setting of a FET beyond the presumptive term: the facts and circumstances of the offenses (aggravated manslaughter of a two-year-old child); an extensive and repetitive prior offense record; nature of criminal record increasingly serious; incarcerated for multiple offenses; prior community supervision revoked for commission of new offenses; prior incarcerations and opportunities for probation failed to deter

criminal behavior; committed new offenses while on probation; committed five institutional infractions including possession of a weapon and two incidents of fighting with another; insufficient problem resolution with lack of insight into violent behavior and minimizing anti-social conduct; and commission of a crime while on bail. The panel also found the following mitigating factors: participation in institutional programs; institutional reports reflecting favorable institutional adjustment; attempted enrollment in programs; minimum custody status achieved and maintained; and a viable parole plan.

The three-member panel established a ninety-six-month FET based on the same factors relied upon by the two-member panel in denying parole.[1] The three-member panel also considered the same mitigating factors considered by the two-member panel, and a letter of mitigation submitted by Saluka. The three-member panel concluded Saluka: (1) did not acknowledge or understand the seriousness of his violent actions; (2) did not acknowledge or grasp the gravity of his behavioral choices which led to an extensive and repetitive prior criminal record; and (3) possessed insufficient insight in understanding the stressors that prompted his behavioral choices.

---

[1] According to respondent, Saluka's projected parole eligibility date is in September 2021, based on the application of commutation, work, and minimum custody credits pursuant to N.J.S.A. 30:4-123.53(a).

Saluka appealed the panels' decisions to the full Board, arguing: 1) the decisions were contrary to written Board policy or procedure; 2) the panels failed to consider material facts supporting parole; 3) the panels' decisions were arbitrary and used a standard of parole consideration that was "unauthorized by law;" and 4) the panels did not properly consider his LSI-R evaluation score. The full Board affirmed, finding no merit in Saluka's challenges to the parole denial and the length of the FET. This appeal followed.

Saluka raises the following arguments on appeal:

> POINT 1
> THE BOARD PANEL VIOLATED WRITTEN BOARD POLICY BY FAILING TO ESTABLISH A NEXUS BETWEEN THE REASONS FOR DENIAL AND THE CONCLUSION THAT THERE EXISTED A SUBSTANTIAL LIKELIHOOD THAT APPELLANT WOULD COMMIT A NEW CRIME IF RELEASED ON PAROLE AT THIS TIME.
>
> POINT 2
> THE BOARD PANEL DENIED JEFFERY SALUKA HIS RIGHT TO PROCEDURAL DUE PROCESS DUE TO THE BOARD PANEL'S VIOLATION OF WRITTEN BOARD POLICY.
>
> POINT 3
> THE NATURE OF THE BOARD PANEL HEARING PRECLUDE[S] A HEARING CONDUCTED WITH FUNDAMENTAL FAIRNESS THUS DEPRIVING JEFFERY SALUKA DUE PROCESS OF LAW.

A-0285-17T1

POINT 4
THE DECISION OF THE BOARD PANEL MUST BE
REVERSED BECAUSE THE BOARD PANEL
FAILED [TO] CONSIDER MATERIAL FACTS.

Our review of the Board's decision is deferential. J.I. v. N.J. State Parole Bd., 228 N.J. 204, 230 (2017). That is so because "Parole Board decisions are highly 'individualized discretionary appraisals,'" Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173 (2001) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)), and are presumed valid, McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). We will not disturb the Board's determination "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). The burden is on the inmate to demonstrate the Board's actions were unreasonable. McGowan, 347 N.J. Super. at 563.

Defendant is serving a sentence for an offense committed before August 18, 1997. Therefore, "the issue before us is governed by the standards in N.J.S.A. 30:4-123.53(a) and 30:4-123.53(c) prior to the amendment of those statutes on that date." Williams v. New Jersey State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000) (citing N.J.A.C. 10A:71-3.10). For offenses committed before August 18, 1997, "the Parole Board may deny parole release if it appears

from a preponderance of the evidence that 'there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.'" Ibid. (quoting L. 1979, c. 441, § 9).

Having reviewed the record in light of these well-settled standards, including the psychological evaluation and other materials in the confidential appendix, we conclude Saluka's arguments are without merit. We find no basis to conclude the Board's decision was arbitrary, capricious, or unreasonable, that it lacked fair support in the record, or that it otherwise violated any policies.

N.J.A.C. 10A:71-3.11(b) (1) to (23) contains a non-exhaustive list of factors the Board may consider in determining whether an inmate should be released on parole, but "the Board [must] focus its attention squarely on the likelihood of recidivism." McGowan, 347 N.J. Super. at 565.

Upon review of the record, we find the Board considered "the aggregate of all the factors which may have any pertinence." Beckworth, 62 N.J. at 360. The Board based its decision on a multitude of aggravating factors, most notably the substantial likelihood that Saluka will commit a new crime if released on parole, and his lack of satisfactory progress in reducing the likelihood of future criminal behavior.

A-0285-17T1

Although the Board recognized some mitigating factors – such as Saluka's participation in programs specific to behavior and minimum custody status achieved and maintained – it acted well within its bounds in finding by a preponderance of the evidence that Saluka, would likely commit a new crime if released on parole at this time.

Concerning the FET, an inmate serving a sentence for aggravated manslaughter is ordinarily assigned a twenty-seven month FET after a denial of parole. N.J.A.C. 10A:71-3.21(a)(1). A three-member panel may impose a FET in excess of administrative guidelines in cases where an ordinary FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d). The Board considered the mitigating and aggravating factors, and acted well within its authority in increasing defendant's FET.

Having reviewed the record, including the materials in the confidential appendix, we discern no basis for disturbing the Board's decision to deny parole and impose the FET, which is amply supported by the record.

Saluka's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0285-17T1