**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2445-17T1

JOSE CAMILO,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted October 2, 2019 – Decided October 30, 2019

Before Judges Sabatino and Sumners.

On appeal from the New Jersey State Parole Board.

Jose Camilo, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Jose Camilo, who is currently incarcerated in East Jersey State Prison, appeals the New Jersey State Parole Board's (the Board's) December 14, 2016 final agency decision denying him parole and imposing a 200-month Future Eligibility Term (FET). We affirm.

On February 9, 1980, Camilo shot and killed his estranged girlfriend's mother, and shot her pregnant sister, leaving her quadriplegic and confined to a wheelchair. The sister's pregnancy was terminated because of the shooting. The sister's five-year-old daughter witnessed the shootings.

On July 12, 1982, a jury convicted Camilo of: (1) murder; (2) attempted murder; (3) aggravated assault; (4) possession of a weapon for an unlawful purpose; (5) unlawful possession of a weapon; and (6) terroristic threats.[1] He was sentenced to life in prison for murder, with a twenty-five-year period of parole ineligibility, and a consecutive term of twenty years for aggravated assault, with a ten-year period of parole ineligibility. The attempted murder conviction was merged with the aggravated assault conviction for sentencing. Ten years later, as a result of Camilo's petition for post-conviction relief, the

---

[1] Following the crime, Camilo fled the United States to the Dominican Republic, his country of citizenship. On or about March 1982, he was arrested in Canada on the outstanding arrest warrant and extradited to the U.S.

A-2445-17T1

aggravated assault sentence was amended to a ten-year sentence, with a five-year period of parole ineligibility, concurrent to the life sentence.

After Camilo became eligible for parole on June 11, 2012, a parole hearing officer referred consideration of Camilo's parole to a two-member panel of the Board. In an initial hearing held a month later, the panel denied parole and set a FET of thirty-six months. Camilo's administrative appeal of that particular ruling was successful and the panel vacated its decision because it had reflected the incorrect standard of review.[2] The Board explained that since he was "incarcerated for crimes committed prior to August 19, 1997; the standard of review in [his] case is whether there is a preponderance of evidence to indicate that there is a substantial likelihood that [he] will commit a new crime if released at this time." The matter was therefore remanded for reconsideration.

The second initial hearing also resulted in a successful appeal by Camilo. After a parole hearing officer referred the parole request to a Board panel in August 2013, it was not until October 2013, when a hearing before a two-member Board panel was convened due to an issue with the documents considered in the first appeal documents. The second initial hearing commenced

---

[2] Camilo was advised in a letter dated February 7, 2013, by the Board's Director, Legal Support Unit, that the two-member panel's decision was being vacated. However, the panel's decision was rendered on March 6, 2013.

in January 2014, when a two-member panel denied parole and referred the matter to a three-person panel to determine the FET. The three-person panel established a 240-month FET in April 2014. In response to Camilo's administrative appeal, in January 2015, the three-member panel vacated its decision because it determined that the transcript did not reflect a verbatim translation of Camilo's April 2014 hearing. Consequently, decisions from the proceedings in August 2013, January 2014, and April 2014, were all vacated in January 2015, requiring the consideration of Camilo's parole to start anew.

Camilo's third initial hearing was held in August 2015, which again resulted in the parole hearing officer referring the matter to a two-member Board panel for a hearing. Later that month, the panel, based upon "interview, documentation in case file, and confidential material/professional report," denied parole, considering the following factors:

- Serious nature of offense(s). Specifically: [five-year] old female witnessed shooting of mother [and] [g]randmother resulting in death of [g]randmother [and] permanent disab[l]ing injuries [sic] to mother;

- Committed to incarceration for multiple offenses;

- Institutional infraction(s):
  [a.] numerous;
  [b.] serious in nature;

4

[c.] loss of commutation time;
[d.] confinement in detention;
[e.] Administrative Segregation. Last infraction: 9-1-01 (3 Asterisk);

- Insufficient problem(s) resolution. Specifically:
    [a.] lack of insight into criminal behavior;
    [b.] minimize conduct;
    [c.] substance abuse problem has not been sufficiently addressed;
[d.] other: [Camilo] continues to show a low regard for the rules/laws of society and his main concern is to get out not to understand how his actions and trigger[s] cause[d] this tragedy and show[s] a clear possibility of such an act occurring again on community supervision. As demonstrated by: interview, documentation in case file, and confidential material [or] professional report;

- Lack of adequate parole plan to assist in successful reintegration into the community.


The panel acknowledged the following mitigating factors:

- No prior offense record;

- Participation in program(s) specific to behavior;

- Participation in institutional program(s);

- Attempt made to enroll and participate in program(s) but was not admitted;

- Risk assessment evaluation 18.

The panel referred the matter to a three-member Board panel to determine the FET. About a month later, and prior to the FET determination, the two-member panel amended its decision to reflect two additional mitigating factors:

- Institutional reports reflect favorable institutional adjustment;

- Commutation time restored.

In November 2015, the three-member panel established a 200-month FET. The panel based its decision on the same factors, including the mitigating factors that the two-person panel applied to deny parole, and a letter of mitigation by Camillo detailing a parole plan that was substantiated by letters from his family in the Dominican Republic where he would be deported to upon his release.

Camilo administratively appealed the decision denying parole and two hundred-month FET to the full Board. In a five-page final agency decision, the Board affirmed the panels' decisions for essentially the same reasons.

Before us, Camilo argues the following point:

POINT I

THE DECISION OF THE PAROLE BOARD TO DENY PAROLE MUST BE VACATED AND PETITIONER SHOULD BE SUBJECT TO PRE-RELEASE CONDITION OF SATISFACTORY COMPETITION OF TWELVE MONTH HALFWAY HOUSE PLACEMENT; DENIAL OF PAROLE AND IMPOSITION OF TWO HUNDRED (200) MONTH

6

FUTURE ELIGIBILITY TERM BY THREE PANEL BOARD FAILED TO SHOW HOW APPELLANT['] S CONDUCT 39-YEARS AGO IN 1980 COULD REVEAL APPELLANTS CURRENT PAROLE SUITABILITY

A. The Decision of the Parole Board Conflicts With This Court[']s Decision In Trantino v. New Jersey State Parole Board[3]

We have considered the contentions raised by Camilo and we affirm substantially for the reasons expressed by the Board in its thorough decision. We add the following remarks.

Under our standard of review, we consider: (1) whether the Board's action is consistent with the applicable law; (2) whether there is substantial credible evidence in the record as a whole to support its findings; and (3) whether in applying the law to the facts, the Board erroneously reached a conclusion that could not have been reasonably made based on the relevant facts. Trantino, 154 N.J. at 24. The Board's decision to grant or deny parole turns on whether "there is a substantial likelihood the inmate will commit" another crime if released. Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7-8 (App. Div. 2000). The Board must consider the enumerated factors in N.J.A.C. 10A:71-3.11(b)(1)-(23) in making its decision. The Board, however, is not required to consider each

---

3 [154 N.J. 19 (1998).]

and every factor; rather, it should consider those applicable to each case. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 561 (App. Div. 2002).

An inmate serving a minimum term in excess of fourteen years is ordinarily assigned a twenty-seven month FET after a denial of parole. See N.J.A.C. 10A:71-3.21(a)(1). However, N.J.A.C. 10:71-3.21(d) allows a three-member panel to establish a FET outside of the administrative guidelines if the presumptive twenty-seven month FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior."

Here, the Board's action is consistent with the applicable law, there is substantial credible evidence in the record as a whole to support its findings, and the Board reached conclusions that were based on the relevant facts. The Board made extensive findings, which we need not repeat here, demonstrating the basis for its decision to deny Camilo parole. In its final decision, the Board provided multiple sound reasons for imposing the 200-month FET, which, although lengthy, is neither arbitrary nor capricious. In fact, according to the Board, the FET backdates to the first initial hearing and will be reduced by substantial commutation credits, so that Camilo's parole eligibility date is currently January 17, 2024, and with anticipated work credits and minimum custody credits his

projected parole eligibility date is actually in February 2022. Hence, the 200-month FET is not nearly as severe as it may first appear. On this record, we have no reason to second-guess the Board's findings or conclusions and defer to its expertise in these matters.

To the extent we have not specifically addressed any of defendant's arguments, it is because we find they have insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION