**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0265-18T4

ROBERT RELDAN,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Argued September 23, 2019 – Decided December 4, 2019

Before Judges Moynihan and Mitterhoff.

On appeal from the New Jersey State Parole Board.

Robert J. Flanagan, III, argued the cause for appellant (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Raymond M. Brown, of counsel and on the briefs; Robert J. Flanagan, III, on the briefs).

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

PER CURIAM

Appellant Robert Reldan appeals from the New Jersey State Parole Board's final decision, contending the Board erred in concurring with and affirming the three-member Board panel's decision because that panel abused its discretion when it failed to consider mitigating factors relative to appellant's recent conduct, and placed too much weight on other factors regarding his past behavior in both denying his parole request and setting a 120-month future parole eligibility term (FET). We affirm.

After a two-member Board panel determined there was a substantial likelihood appellant would commit a new crime if released on parole supervision,[1] that panel referred the matter to the three-member panel to establish an FET in excess of that provided in the presumptive schedule. See N.J.A.C. 10A:71-3.21(a), (c), (d). In a seventeen-page narrative notice of decision, issued after its initial denial because it reconvened to consider a post-

_____

[1] Parole for a conviction imposed on offenses committed before August 18, 1997, "is governed by the standard[s] in N.J.S.A. 30:4-123.53(a) and 30:4-123.56(c) prior to the amendment of those statutes on that date." Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000) (citing N.J.A.C. 10A:71-3.10). The pre-amendment statute provides, "the Parole Board may deny parole release if it appears from a preponderance of the evidence that 'there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.'" Ibid. (quoting L. 1979, c. 441, § 9).

decision letter of mitigation from appellant's counsel, the three-member panel supplemented its initial Notice of Decision checklist of fifteen reasons for denial of parole. It also detailed reasons relating to the 120-month FET it established: the facts and circumstances of the crimes for which appellant is incarcerated; the extensiveness and repetitiveness of his prior record; the increasing seriousness of that record; the number of offenses for which defendant is incarcerated; behavior while on community supervision that resulted in violations and termination because of offenses committed while supervised; institutional infraction history; insufficient problem resolution; commission of a crime while incarcerated; and counsel's letter of mitigation.

Contrary to appellant's argument, the consideration of the factors related to his crimes complied with the requirement that "[p]arole decisions shall be based on the aggregate of all pertinent factors, including material supplied by the inmate and reports and material which may be submitted by any persons or agencies which have knowledge of the inmate." N.J.A.C. 10A:71-3.11(a). The non-exhaustive list of those factors includes:

1. Commission of an offense while incarcerated.

2. Commission of serious disciplinary infractions.

3. Nature and pattern of previous convictions.

A-0265-18T4

4. Adjustment to previous probation, parole and incarceration.

5. Facts and circumstances of the offense.

6. Aggravating and mitigating factors surrounding the offense.

7. Pattern of less serious disciplinary infractions.

8. Participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during incarceration. This includes, but is not limited to, participation in substance abuse programs, academic or vocational education programs, work assignments that provide on-the-job training and individual or group counseling.

9. Statements by institutional staff, with supporting documentation, that the inmate is likely to commit a crime if released; that the inmate has failed to cooperate in his or her own rehabilitation; or that there is a reasonable expectation that the inmate will violate conditions of parole.

10. Documented pattern or relationships with institutional staff or inmates.

11. Documented changes in attitude toward self or others.

12. Documentation reflecting personal goals, personal strengths or motivation for law-abiding behavior.

13. Mental and emotional health.

14. Parole plans and the investigation thereof.

4

15. Status of family or marital relationships at the time of eligibility.

16. Availability of community resources or support services for inmates who have a demonstrated need for same.

17. Statements by the inmate reflecting on the likelihood that he or she will commit another crime; the failure to cooperate in his or her own rehabilitation; or the reasonable expectation that he or she will violate conditions of parole.

18. History of employment, education and military service.

19. Family and marital history.

20. Statement by the court reflecting the reasons for the sentence imposed.

21. Statements or evidence presented by the appropriate prosecutor's office, the Office of the Attorney General, or any other criminal justice agency.

22. Statement or testimony of any victim or the nearest relative(s) of a murder/manslaughter victim.

23. The results of the objective risk assessment instrument.

[N.J.A.C. 10A:71-3.11(b).]

The three-member panel properly considered the circumstances that resulted in appellant's State prison sentences: in 1986, to life consecutive to

thirty years for two murders committed in 1975;[2] in 1978, to twenty to twenty-five-year concurrent terms for four counts of advocate homicidal death and one count of conspiracy to commit murder, committed while appellant was an inmate in State prison; in 1981, to an aggregate twenty-two-year term for escape, possession of an implement of escape, aggravated assault of a police officer, robbery and theft committed during an escape during his first murder trial in October 1979; in 1987, to an aggregate fifteen-year term with seven and one-half years of parole ineligibility for conspiracy to commit escape and possession of a weapon for an unlawful purpose committed in 1981 while a State prison inmate.[3] All sentences ran consecutive to those terms already imposed.

We detailed the circumstances of each of the crimes for which appellant was sentenced in our previous decisions, State v. Reldan, 185 N.J. Super. 494 (App. Div. 1982) (regarding the two murders); Reldan v. N.J. State Parole Bd., No. A-6039-10 (App. Div. July 9, 2012) (slip op. at 1); Reldan v. N.J. State Parole Bd., No. A-1786-13 (App. Div. Apr. 24, 2015) (slip op. at 1), and need not recount them here. Suffice it to say the crimes involved violence or the

---

[2] Appellant's 1979 convictions for those murders were reversed, and he was sentenced again after he was found guilty at a 1986 retrial.

[3] Appellant's 1983 sentences for those and other related crimes were reversed, and he was resentenced in 1987.

extreme threat thereof; we note the sentencing judge's comments about the two murders:

> Words are inadequate to describe the abject evil of these depraved acts of murder. He ended the lives of two you[ng] women in a state of horror, degradation and pain. This defendant should never again be allowed the opportunity to inflict his evil propensities on society. In view of defendant's outrageous record, [noted as "a substantial juvenile record" and "sixteen known arrests and fifteen convictions"], the complete lack of any mitigating circumstances, this especially heinous, cruel and depraved manner of defendant's acts that resulted in two . . . murders, the certainty of further criminal activity and the absolute need to deter requires lengthy incarceration.

The three-member panel appropriately considered other N.J.A.C. 10A:71-3.11(b) factors: appellant committed crimes while incarcerated and reoffended numerous times while on probation and parole, including the two murders; his extensive, repetitive and increasingly serious record that resulted in multiple prison terms; and his institutional infraction record of twenty-nine infractions committed over thirty-nine years, seven of which were asterisk offenses,[4] that

---

[4] Prohibited acts that are subject to disciplinary action in State prison are classified into categories. Those preceded by an asterisk "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

resulted in detention, administrative segregation and loss of 1270 days commutation credit.

The three-member panel specifically noted appellant was infraction-free since his last parole hearing, with the last infraction taking place in 2009. Other mitigating factors found by the panel were appellant's participation in behavior-specific programs, institutional programs and attempts to enroll in programs to which he was not admitted, and that institutional reports reflected favorably on appellant's adjustment.

The panel's reasons for denying parole included appellant's denial of parts of offenses and minimization of others. The reasons for parole denial dovetailed with the reasons the panel set a 120-month FET.

Notwithstanding institutional reports of a favorable adjustment, the panel extensively reviewed appellant's responses to questions posed during a panel hearing and concluded he exhibited insufficient problem resolution. Although appellant argues the three-member panel did not specify which questions and answers justified its finding, it comprehensively reviewed appellant's dichotomous answers about how the murders occurred, at one point saying they were "spur of the moment," then denying there was any compulsion to commit the crimes and that "nothing [appellant] ever did . . . was on impulse, it was

8

thought out . . . the thinking was twisted and wrong, but it wasn't impulsive or compulsive." The panel found appellant's answers to be "contradictory and incongruous." The panel continued:

> You maintained throughout the lengthy hearing that your multiple criminal acts and anti-social conduct were not compulsive or impulsive. You steadfastly stated that all of the negative decision making on your part was "thought out" and you knowingly chose to behave in such a manner. However, comments and statements by you during the hearing were replete with you noting that crimes were done by you "on the spur of the moment."

The panel also viewed appellant's answers that he did not intend to kill the murder victims but they died as an unintended consequence of robbery from the type of hold he placed around their necks, as "minimizing" his conduct, "demonstrating a lack of empathy and remorse." The panel concluded appellant was "unsure of [his] motivations for [his] anti-social conduct," and that he was "currently . . . unable to recognize the severity of the violence involved in [his] criminal behavior." The panel also viewed appellant's answers regarding his incarceration as being a "waste of [the panel's] time" without any benefit to society and that "you should have killed me, if you wanted to get rid of me," as "concerning, in regards to [appellant's] current mental state of mind." The panel found "more work needs to be done on [appellant's] part to gain a better

9

understanding how [he] need[s] to adequately process, recognize and cope with situations involving stress, confrontation and making appropriate behavioral decisions."

In specifying a 120-month FET, the three-member panel echoed some of its prior finding that in appellant's thirty-nine years of incarceration, he

> [p]resent[s] as not possessing an appropriate understanding of [his] criminal thinking. At the present hearing, [appellant] wavered between commenting that [his] crimes were "thought out" and that [he] "chose" to commit them, to [him] offering that certain crimes were "spur of the moment." Regarding the possibility that [his] negative decision-making was influenced by a level of impulsivity on [appellant's] part, [he] maintained that [he has] never had an issue with acting on impulse. The Board panel does not agree with this assessment on [appellant's] part and is concerned by [his] failure to recognize or acknowledge the complexities to [his] anti-social thinking. As to motive for [appellant's] past actions, [he] offered personal gain and an effort to appease [his] father. These possible contributory factors do not explain the level of violence and manipulative behavior that [he has] exhibited. More work needs to be done on [his] part to gain a better understanding as to the depths of [his] anti-social conduct; and

> [Appellant] [p]resents as not acknowledging the seriousness or extent of violence [he has] exhibited. [He] continue[s] to place a great empha[sis] on [his] belief that the two asphyxiation murders [he] committed were not intentional and infer[s] that the legal definition of murder (premeditation) does not apply to [his] actions. By putting forth such a stance,

10

> [he] minimize[s] [his] violent actions and distance[s] [himself] from taking full responsibility for the victim's deaths, thus showing an inappropriate level of empathy or remorse.

In considering appellant's contentions that the Board erred in finding that the three-member panel did not abuse its discretion in denying parole and in establishing a 120-month FET, we utilize the same standard of review applicable to other administrative agency decisions. Trantino v. N.J. State Parole Bd. (Trantino IV), 154 N.J. 19, 24-25 (1998). "We may overturn the . . . Board's decisions only if they are arbitrary and capricious." Trantino v. N.J. State Parole Bd. (Trantino V), 166 N.J. 113, 201 (2001). Because the parole eligibility statute creates a presumption that an inmate should be released on the inmate's eligibility date, N.J.S.A. 30:4-123.53(a), decisions against release must be considered arbitrary if they are not supported by a preponderance of the evidence in the record. Kosmin v. N.J. State Parole Bd., 363 N.J. Super. 28, 42 (App. Div. 2003).

"The decision of a parole board involves 'discretionary assessment[s] of a multiplicity of imponderables . . . .'" Trantino V, 166 N.J. at 201 (first alteration in original) (quoting Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 10 (1979)). "To a greater degree than is the case with other administrative agencies, the Parole Board's decision-making function involves

individualized discretionary appraisals." Ibid. (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)). We will not second-guess the Board's application of its considerable expertise in sustaining the panel's determinations. See, e.g., In re Vey, 272 N.J. Super. 199, 205-06 (App. Div. 1993), aff'd, 135 N.J. 306 (1994).

We accord that deference here in light of the record evidence. The Board panel measured appellant's entire record. Even considering, as the Board acknowledged, appellant "has made some progress," and his Level of Service Inventory – Revised (LSI-R) score has improved to nineteen which categorizes appellant as a "low-moderate" risk for recidivism, there is sufficient evidence in the record to support the denial of parole.

We recognize appellant's assertion that the three-member panel failed to consider letters submitted on his behalf. The Board pointed to appellant's discussion of those letters at the hearing in concluding appellant's contention that the letters were not considered "to be without merit." We remind the Board that, like any adjudicatory body—including the courts—findings of fact and conclusions of law are required for due process and appellate review. The mere mention of evidence by a party during a hearing does not suffice to prove that the adjudicatory body considered evidence. Nonetheless, the letters are akin to

the programs in which appellant participated. Although there is some indication of progress and insight, the letters were insufficient to have a significant impact in the Board's final decision.

We also note that appellant's psychologist's report was submitted directly to the Board well after the conclusion of the panel hearings. As such, the report need not have been considered. See N.J.A.C. 10A:71-3.7(j) ("An inmate may submit for consideration at a hearing to be conducted pursuant to N.J.A.C. 10A:71-3.18 [Board panel hearing] or 3.20 [Board hearing] any evaluation report prepared in his or her case by a private psychologist or psychiatrist. Such an evaluation shall be performed not more than 180 days prior to the parole eligibility date of the inmate.")

Further, the psychologist concluded appellant presented a low to moderate current and foreseeable risk of engaging in violent behavior if released on parole. The Board was not bound to accept that opinion. In fact, the three-member panel's conclusion to the contrary, adopted by the Board, is buttressed, not only by the record evidence we have heretofore analyzed, but by a well-grounded confidential report considered by the panel which we have also reviewed. The report also provides a sufficient basis for the Board's ultimate

13

determination that the report submitted by appellant's psychologist did "not warrant disturbing the Board panel's decision."

We are satisfied the Board, as mandated by N.J.A.C. 10A:71-3.11(a), based its decision "on the aggregate of all pertinent factors." The record belies all of appellant's contrary contentions. Although mitigating factors applied and were considered, it was within the Board's discretionary power to determine that the considerations in favor of finding that there is a substantial likelihood appellant would commit another crime if released on parole outweigh those mitigating considerations.

We are cognizant the FET greatly exceeds the N.J.A.C. 10A:71-3.21 schedule for adult inmates, which provides that an inmate "serving a sentence for murder . . . or serving any minimum-maximum or specific sentence in excess of 14 years for a crime not otherwise assigned pursuant to this section shall serve 27 additional months." N.J.A.C. 10A:71-3.21(a)(1). The FET "may be increased or decreased by up to nine months when, in the opinion of the Board panel, the severity of the crime for which the inmate was denied parole and the prior criminal record or other characteristics of the inmate warrant such adjustment." N.J.A.C. 10A:71-3.21(c). A twenty-seven-month FET increased by nine months would be a thirty-six-month, or three-year FET.

The record, as we have explained, supports the imposition of a lengthier FET because, based on the panel's findings, a twenty-seven-month FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d). We have carefully considered appellant's argument that we previously remanded, in 2012 and 2015, respectively, appellant's prior appeals of the Board's FET decisions imposing a 240-month FET and a 228-month FET; and that the imposition of a 120-month FET, considering appellant's age, "will effectively leave him imprisoned for the rest of his life without the chance for parole simply based on his history."

The three-member panel carefully considered the issues which appellant had to address in light of its findings as delineated in its narrative notice of decision. The established FET projects an eligibility date in August 2023. The panel reminded appellant he was entitled to an annual parole review at which his "progress, or lack thereof, towards rehabilitation will be monitored." The panel "strongly encouraged" that appellant avail himself of the reviews. "If the [p]anel determines at [appellant's] annual review that [he has] made progress towards [his] rehabilitation, the [p]anel may reduce" the FET.

We discern no reason to set aside these discretionary evaluations. The Board applied the correct legal standard and considered the relevant factors under N.J.A.C. 10A:71-3.11(b) in deciding to deny parole and set a 120-month FET. On the record presented, its decision was not arbitrary or capricious, see McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002), and we conclude that the Board did not abuse its discretion in denying appellant's application for release on parole. We do not substitute our judgment for that of the Board with respect to denial of parole or the setting of an FET. See N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0265-18T4