NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1338-17T4

STEPHEN D. PERRY,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

APPROVED FOR PUBLICATION

May 16, 2019

APPELLATE DIVISION

Submitted April 10, 2019 – Decided May 16, 2019

Before Judges Alvarez, Reisner and Mawla.

On appeal from the New Jersey State Parole Board.

Stephen D. Perry, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Erica R. Heyer, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MAWLA, J.A.D.

Appellant Stephen D. Perry has a lengthy criminal history.  In addition to other sentences, he is serving a life sentence.  Although Perry has been

parole eligible, he has incurred infractions during his incarceration which resulted in the New Jersey State Parole Board (Board) imposing a 240-month future eligibility term (FET), outside of the twenty-seven-month presumptive FET, which Perry now challenges.

We hold the Board used the incorrect standard to determine Perry's parole eligibility because it retroactively applied the amended version of N.J.S.A. 30:4-123.56, which became effective in 1997. Accordingly, we reverse and remand the Board's May 31, 2017 decision for reconsideration consistent with this opinion.

We take the following facts from the record. In January 1979, Perry and two other individuals broke into a Bergen County residence and stole a stereo, a rifle, and jewelry. Police encountered the trio and when ordered to stop, they fled. During the pursuit, Perry began shooting at the officers, striking one in the wrist and chest. Officers returned fire, striking Perry twice in the abdomen. Police apprehended Perry, who had jewelry from the residence in his possession.

Officers transported Perry to the hospital, restrained him in a hospital bed, and posted a sheriff's officer as a guard. The officer loosened Perry's restraints only to permit him to use the restroom. At night, during trips to the restroom, Perry managed to gradually loosen the top of his metal intravenous

stand. In the morning, Perry attacked the officer with the stand and disarmed him. He shot and killed the officer before fleeing.

Perry was also indicted for various offenses which occurred before the murder. He was found guilty and sentenced in September 1979, to an aggregated term of twenty to twenty-five years of incarceration for breaking and entering with intent to steal, larceny, carrying a concealed weapon, possession of a weapon, assault with intent to kill, being armed, assault with a dangerous weapon, and assault and battery on a police officer. Following these convictions, Perry was indicted for the officer's murder and pled guilty to the offense. In October 1979, he was sentenced to life in prison to be served consecutive to his first indictment.

Perry was indicted five more times for crimes committed in August (two), September, October, and November 1978. In 1980, he was sentenced to the following: concurrent three to five years imprisonment for attempted breaking and entering and carrying a concealed weapon, to be served concurrently with his other sentences; concurrent five to seven years imprisonment for assault and battery of a police officer; concurrent five to ten years imprisonment for possession of a stolen motor vehicle, larceny, and utter forged check; a concurrent term of four to eight years imprisonment for

forging a check and obtaining money by false pretenses; and a concurrent term of six to ten years imprisonment for breaking and entering and larceny.

In 2001, Perry was indicted for possession of a controlled dangerous substance (CDS), possession with intent to distribute, and distribution of a CDS for distributing a packet of heroin to a fellow inmate. In 2003, he pled guilty to the offenses and was sentenced to a four-year prison term consecutive to the sentences he was serving under the 1979 convictions, with a one-year mandatory-minimum.

Perry also had a history of parole and probation violations related to arrests, which occurred prior to the murder. In August 1976, his parole was revoked for parole violations. Perry was sentenced to 364 days of incarceration, which was converted to probation, conditioned on his completion of an inpatient drug program. However, he escaped custody, was re-apprehended, and sentenced to complete the original term of incarceration. Afterwards, Perry was released on parole, which was again revoked in February 1979, following the murder and additional offenses we noted.

In 1997, Perry became eligible for parole on the murder sentence. He was denied parole and the Board established a fifteen-year FET. Perry became parole eligible for a second time in 2010, and the Board established a three-year FET. When he became eligible for parole for a third time in June 2013, a

two-member panel denied parole and referred his case to a three-member panel to establish an FET outside of the guidelines.

The two-member panel noted Perry's prior criminal record, the increasing severity of his crimes, his multiple convictions, and the fact he had previously violated the conditions of his probation and parole by committing additional offenses. The panel also noted Perry had committed several institutional infractions since the last parole hearing, including two since that hearing, and displayed insufficient problem resolution. The panel found mitigating factors, including that Perry had participated in programs specific to his behavioral deficiencies and other institutional programs, had obtained average to above average institutional reports, attempted to enroll and participate in other programs, and had his commutation time restored.

However, the panel concluded incarceration had not deterred Perry's criminality, he lacked insight into his behavior, and continued to minimize the nature of his conduct:

> [Perry] appears to be unable or unwilling to accept responsibility for the first shooting of a police officer [claiming it was a co-defendant] and regarding his murder offense of a police officer, [Perry] also deflects blame by implying that the officer was drunk and was instigating trouble because he held a previous grudge and that "in the course of the struggle he got shot."

The panel also concluded Perry minimized his institutional infractions and the 2001 CDS offenses.

A three-member panel considered Perry's case and established a 240-month FET. The panel explained its reasoning in a May 28, 2014 written decision. It based its determination on the same factors relied upon by the two-member panel. Perry appealed the decisions to the full Board.

For reasons that are temporally irrelevant to this appeal, the Board issued a final decision on May 31, 2017, affirming the three-member panel and finding it had considered the record and explained its reasoning. In pertinent part, the Board concluded

> each term of imprisonment has a separate parole eligibility term and . . . pursuant to N.J.S.A. 30:4-123.51(h), when an inmate is sentenced to more than one term of imprisonment, the Board is required to aggregate the parole eligibility term derived from each term for the purpose of determining the primary parole eligibility date.

The Board noted Perry was serving a life sentence imposed in 1979 and a consecutive four-year-term of incarceration imposed in 2003. It found the three-member panel properly applied the post-1997 amendment standard for parole fitness because the consecutive four-year-term had not been served. This appeal followed.

Perry raises the following points on appeal:

I.   THE PAROLE BOARD'S FAILURE TO ARTICULATE ITS REASONS FOR CONCLUDING THAT THE STATUTORY STANDARD FOR DENYING PAROLE WAS SATISFIED CONSTITUTES AN ABUSE OF DISCRETION THAT WARRANTS REVERSAL

A.   MEANINGFUL JUDICIAL REVIEW REQUIRES THE PAROLE BOARD TO SUFFICIENTLY ARTICULATE ITS FINDINGS

B.   FAILURE TO CONSIDER THE REMOTENESS IN TIME OF APPELLANT'S PRIOR VIOLENT CRIMES CONSTITUTED ARBITRARY ACTION BY THE BOARD

C.   THE BOARD'S FINDINGS THAT APPELLANT LACKED "INSIGHT" INTO HIS PRIOR CRIMINAL BEHAVIOR [THIRTY-NINE] YEARS AGO APPLIES AN AMORPHOUS STANDARD THAT IS NOT RELATED TO THE CURRENT RISK OF RECIDI[VI]SM

II.   THE BOARD APPLIED THE INCORRECT STANDARD FOR PAROLE FITNESS AND, AS SUCH, APPELLANT'S DUE PROCESS RIGHTS HAVE BEEN VIOLATED IN MULTIPLE RESPECTS

A.   INCORRECT STANDARD FOR PAROLE FITNESS

B.   EX POST FACTO CLAUSE VIOLATION

III.   THE BOARD HAS CONSISTENTLY AND REPEATEDLY ENGAGED IN ARBITRARY AND CAPRICIOUS TREATMENT OF APPELLANT AND

7

HIS CASE MUST BE CONSIDERED BY A NEUTRAL, DETACHED, AND IMPARTIAL TRIBUNAL

. . . .

IV. N.J.A.C. 10A:71-3.21(d) VIOLATES THE SEPARATION OF POWERS DOCTRINE AND DUE PROCESS OF LAW PROTECTIONS, RENDERING IT UNCONSTITUTIONAL

    A. SEPARATION OF POWERS VIOLATION

    B. LACK OF INDEPENDENT SCHEDULE VIOLATES DUE PROCESS OF LAW AND RENDERS THE [TWENTY]-YEAR FET AN ARBITRARY DECISION

    C. SEVERING N.J.A.C. 10A:71-3.21(d) FROM THE REMAINING ADMINISTRATIVE REGULATIONS IS AN APPROPRIATE REMEDY

I.

Appellate review of parole determinations "focuses upon whether the factual findings made by the Parole Board could reasonably have been reached on sufficient credible evidence in the record." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 199 (2001) (citing Trantino v. N.J. State Parole Bd., 154 N.J. 19, 24 (1998)). "To a greater degree than is the case with other administrative agencies, the Parole Board's decision-making function involves individualized discretionary appraisals." Id. at 201 (citing Beckworth v. N.J.

State Parole Bd., 62 N.J. 348, 358-59 (1973)). This court "may overturn the Parole Board's decisions only if they are arbitrary and capricious." Ibid. "Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances." Ibid. (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)).

"[A] reviewing court is obligated to 'determine whether [the Board's] factual finding could reasonably have been reached on sufficient credible evidence in the whole record.'" Id. at 172 (quoting Trantino, 154 N.J. at 24). Specifically, we must decide:

> (1) whether the agency's action violates express or implied legislative policies, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Trantino, 154 N.J. at 24.]

As to questions of law,

> [w]e owe considerable deference to an agency's interpretation of its own regulations. US Bank, NA v. Hough, 210 N.J. 187, 200 (2012) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). However, "an agency's interpretations, whether through regulations or administrative actions, 'cannot alter the terms of a legislative enactment nor can they frustrate the policy

embodied in [a] statute.'" Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 183 (App. Div. 2011) (alteration in original) (quoting N.J. Ass'n of Realtors v. N.J. Dep't of Envtl. Prot., 367 N.J. Super. 154, 159-60 (App. Div. 2004)). "Ultimately, reviewing courts are not 'bound by the agency's interpretation of a statute.'" Ibid. (quoting Shim v. Rutgers, 191 N.J. 374, 384 (2007)).

[Norman v. N.J. State Parole Bd., 457 N.J. Super. 513, 519 (App. Div. 2019).]

Perry argues that since the sentence he is currently serving is for a crime he committed prior to the 1997 amendment to N.J.S.A. 30:4-123.56, the Board improperly used the 1997 amendment standard when it should have used the pre-amendment standard. Because the Board applied the incorrect parole eligibility standard, we remand the matter. We do not address the balance of Perry's arguments.

II.

Parole for a conviction imposed on offenses committed before August 18, 1997, "is governed by the standard[s] in N.J.S.A. 30:4-123.53(a) and 30:4-123.56(c) prior to the amendment of those statutes on that date." Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000) (citing N.J.A.C. 10A:71-3.10). The pre-amendment statute provides "the Parole Board may deny parole release if it appears from a preponderance of the evidence that 'there is a substantial likelihood that the inmate will commit a crime under the

10

laws of this State if released on parole at such time.'" Ibid. (quoting L. 1979, c. 441, § 9). For offenses committed after August 18, 1997, the Board may deny parole where it appears "by a preponderance of the evidence . . . the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole . . . if released on parole at that time." N.J.S.A. 30:4-123.53(a).

N.J.S.A. 30:4-123.51(h) states where "an inmate is sentenced to more than one term of imprisonment, the primary parole eligibility terms calculated pursuant to this section shall be aggregated by the [B]oard for the purpose of determining the primary parole eligibility date, except that no juvenile commitment shall be aggregated with any adult sentence." N.J.A.C. 10A:71-3.2(d) promulgates the rules for the aggregation of consecutive sentences and states: "When a consecutive term is imposed, the parole eligibility term derived from the consecutive term, less county jail credits, shall be added to the parole eligibility term derived from the original term, less county jail credits, to determine the aggregate parole eligibility term." Aggregation is a "mechanical function" performed by the Board. Curry v. N.J. State Parole Bd., 309 N.J. Super. 66, 71 (App. Div. 1998).

N.J.A.C. 10A:71-3.2 does not address the issue of which standard of parole eligibility applies where the Board must aggregate a pre- and post-

amendment sentence. It promulgates rules regarding a mechanical determination, namely, the consideration of the length of an inmate's separate sentences. Therefore, we must determine whether N.J.S.A. 30:4-123.53 may be applied retroactively.

We recently stated:

> As a general principle, in criminal as well as other statutes, "the law favors prospective, rather than retroactive, application of new legislation unless a recognized exception applies." Ardan v. Bd. of Review, 444 N.J. Super. 576, 587 (App. Div. 2016); State v. Parolin, 171 N.J. 223, 233 (2002). . . . "Courts must apply a two-part test to determine whether a statute should be applied retroactively: (1) whether the Legislature intended to give the statute retroactive application; and [if so] (2) whether retroactive application 'will result in either an unconstitutional interference with vested rights or a manifest injustice.'" Ardan v. Bd. of Review, 444 N.J. Super. at 587 (quoting James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014)).

> Under the first part of the test enunciated in James, the presumption against retroactivity "can be overcome by an indication of contrary legislative intent, either expressed in the language of the statute itself, or implied in its purpose." See State v. Bey, 112 N.J. 45, 103 (1988). When an appellate court finds that retroactive legislative intent exists, it is well-established that the court must "apply the statute in effect at the time of its decision . . . to effectuate the current policy declared by the legislative body." Ibid. (quoting Kruvant v. Mayor & Council of Twp. of Cedar Grove, 82 N.J. 435, 440 (1980)).

> Within the first part of the test, three exceptions to the general rule of prospective application are well-established: (1) when the Legislature intended retroactive application of the statute either expressly, as "stated in the language of the statute or in the pertinent legislative history," or implicitly, requiring retroactive application to "make the statute workable or to give it the most sensible interpretation"; (2) when the statute is "ameliorative or curative"; or (3) when the "expectations of the parties may warrant retroactive application." Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981). "Under the second exception to the general rule, the term 'ameliorative' refers only to criminal laws that effect a reduction in a criminal penalty." Street v. Universal Mar., 300 N.J. Super. 578, 582 (App. Div. 1997) (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 286 (App. Div. 1987)).
>
> [State in Interest of J.F., 446 N.J. Super. 39, 53-54 (App. Div. 2016).]

The relative amended language of N.J.S.A. 30:4-123.56 became effective August 18, 1997. Our review of the statute's legislative history reveals no evidence of an express or implied intent to apply it retroactively. Moreover, retroactive application would work to apply a different and an arguably higher standard for determining Perry's parole eligibility.

Indeed, the standard prior to the 1997 codification of N.J.S.A. 30:4-123.56 permitted the Board to deny parole if it found by "a preponderance of the evidence 'there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.'" Williams, 336 N.J. Super. at 7 (quoting L. 1979, c. 441, § 9). The 1997

codification eliminated the "substantial likelihood" requirement and broadened the Board's consideration to not only the commission of another crime by the parolee, but release can be denied if the "inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole . . . if released on parole[.]" N.J.S.A. 30:4-123.56. The current statute effectively broadens both the overall discretion of the Board to deny parole and the reasons for the denial of parole.

Thus, the legislative revisions of N.J.S.A. 30:4-123.56 had neither an ameliorative nor a curative function. Therefore, it cannot be said the "expectations of the parties . . . warrant[ed] retroactive application." J.F., 446 N.J. Super. at 54.

For these reasons, we hold the post-1997 amendment language of N.J.S.A. 30:4-123.56 has no applicability to parole determinations for inmates eligible for parole who are serving sentences entered prior to August 18, 1997. The Board must determine parole eligibility for such inmates by considering whether there is, by a preponderance of the evidence, a substantial likelihood the inmate will commit a crime if released on parole pursuant to N.J.S.A. 30:4-123.56 (1979).

Finally, the FET imposed here was quite substantial. The Board relied upon Perry's rationalizations of his past offenses and conduct during his

incarceration to support an FET beyond the presumptive duration. However, on remand, the Board must correlate its findings with the length of the FET imposed, as the sentence for the 2001 offense, which drew the lengthy FET, was just four years.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1338-17T4