**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4126-18T2

JOSEPH PRESHER,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted February 4, 2020 – Decided March 16, 2020

Before Judges Yannotti and Currier.

On appeal from the New Jersey State Parole Board.

Joseph Presher, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Suzanne Marie Davies, Deputy Attorney General, on the brief).

PER CURIAM

Joseph Presher appeals from a final determination of the New Jersey State Parole Board (Board), which denied his application for parole and established a ninety-six-month future eligibility term (FET). We affirm.

I.

On June 22, 1988, at around 7:50 a.m., police in the Borough of Franklin, Sussex County, responded to a report of a woman who had been found dead in her home. The police found that the woman's wrists had been bound and a sock wrapped around her throat. She had been strangled, beaten, and stabbed six times in the chest.

The police observed that an inverted crucifix, wrapped with a pair of rosary beads and a piece of palm, had been placed over the victim's vagina. They found a bloody kitchen knife on a towel near the victim's head. A clock radio was lying on the floor between the victim's head and a night table. A telephone also had been knocked to the floor.

The investigating officers spoke with the victim's husband, who said he had no idea how his wife died. He said that when he left for work in the morning, she was alive. At around 8:00 a.m., the victim's husband received a call from his son, who told him to return home because the victim was dead. The officers questioned several men who worked with the victim's husband, including

Presher. These men would regularly meet the victim's husband at his home in the morning and drive together to work.

Presher agreed to provide a statement to the investigating officers. He said that on the morning of June 22, 1988, he went to the victim's residence to get a ride to work. He claimed he entered the house and saw the victim's husband stab the victim repeatedly. The officers told Presher that, based on his statement, they were going to arrest the victim's husband. They asked Presher if he wanted to tell the victim's husband to his face that he saw him murdering his wife.

Presher broke down and later provided a statement to the investigators. He said that on the morning of June 22, 1988, he went to the victim's house and waited for her husband to leave. He entered the victim's bedroom as she slept and placed his hand over her mouth. Presher said the victim struggled. He tried to speak with her, but she would not listen to him.

Presher tied the victim to her bed, went downstairs to the kitchen, and retrieved a knife. He went upstairs and again tried to speak with the victim. She still would not listen to him. He said he became furious, grabbed the telephone cord and tried to strangle her. He retrieved a towel from the bathroom, wrapped his hand in the towel, and stabbed her with the knife.

3

Presher said he remembered rifling through the dresser and drawers in the bedroom and living room. He next remembered running through the woods to return home. He took a shower and went by bus to his uncle's gas station, where he remained all day helping his uncle. Later, Presher's aunt and uncle drove him home, where the police were waiting to question him about the victim's death.

After he recounted the details of the murder, Presher provided further information to the investigating officers. He stated that he had a romantic relationship with the victim over a six-month period, but the relationship ended when he was incarcerated as a result of his conviction on burglary and theft charges.

Presher said that when he was released from jail, he lived with another woman, but that relationship ended. Presher then tried to re-establish his relationship with the victim; however, she was not interested. She said she wanted to remain with her husband. Presher stated that a week before the murder, he discovered the victim had been "screwing around" with men other than her husband.

On October 27, 1988, a Sussex County grand jury charged Presher with murder, felony murder, burglary, and possession of a weapon for an unlawful purpose. Thereafter, Presher pled guilty to murder and possession of a weapon

4

for an unlawful purpose. On February 2, 1990, the court merged the offenses, and sentenced Presher to life imprisonment, with thirty years of parole ineligibility.

Presher first became eligible for parole on July 1, 2018. A hearing officer conducted a hearing on March 15, 2018. The hearing officer referred the matter to a two-member Board panel for further proceedings.

The two-member panel issued a notice of decision dated April 10, 2018, denying parole. The panel found there was a substantial likelihood Presher would commit a new crime if released on parole at this time. The panel referred the matter to a three-member panel to establish a FET outside the administrative guidelines. N.J.A.C. 10A:71-3.21(d).

On August 1, 2018, the three-member panel established a ninety-six-month FET. In its notice of decision, the panel noted the reasons for establishing a FET outside the guidelines.

Presher filed an administrative appeal to the full Board. The Board issued its final decision on April 24, 2019, affirming the denial of parole and the ninety-six-month FET. This appeal followed.

Presher argues that the Board erred by denying his application for parole. He contends there were insufficient grounds to deny parole.

"The Parole Board has broad but not unlimited discretionary powers in reviewing an inmate's record and rendering a release decision." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). "To a greater degree than is the case with other administrative agencies, the Parole Board's decision-making function involves individualized discretionary appraisals." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 201 (2001) (Trantino V). Thus, the scope of appellate review of the Parole Board's decision is "limited." Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004).

"Judicial review of the Parole Board's decisions is guided by the arbitrary and capricious standard that constrains other administrative action." Acoli v. N.J. State Parole Bd., 224 N.J 213, 222-23 (2016). Accordingly, the Board's decisions should be reversed "only if they are arbitrary and capricious." Trantino V, 166 N.J. at 201. We must uphold the Board's factual findings if they "could reasonably have been reached on sufficient credible evidence in the whole record." Trantino v. N.J. State Parole Bd., 154 N.J. 19, 24 (1998)

(Trantino IV) (quoting N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988)).

> In reviewing the Board's denial of parole, we consider the following:
>
> > (1) whether the agency's action violates express or implied legislative policies, i.e., did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> > [Ibid.]

On appeal, Presher argues that the Board should have granted his application for parole. He asserts that he has had only four institutional infractions over a thirty-year period and "[i]t is a rare inmate who has a clean disciplinary history." He also claims he has attempted to receive mental health and substance abuse treatment while imprisoned, but has, at times, been deemed ineligible. He asserts the Board erred by not considering his age as a mitigating factor.

Presher also asserts that he has completed over 11,250 hours of job training while imprisoned and has acted as a teacher's aide. He contends he has an adequate parole plan. He contends he provided an "acceptable" address to

the Board and he should be placed in a "halfway" program to ease his transition into "normal life."

"Parole for a conviction imposed on offenses committed before August 18, 1997, 'is governed by the standard[s] in N.J.S.A. 30:4-123.53(a) and 30:4-123.56(c) prior to the amendment of those statutes on that date.'" Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 194 (App. Div. 2019) (quoting Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000)). The pre-amendment statute states, in relevant part:

> An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report filed . . . or developed or produced at a hearing . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime . . . if released on parole at such time.
>
> [N.J.S.A. 30:4-123.53(a) (1979).]

The statute "effectively establishes a presumption in favor of parole." In re Parole Application of Trantino, 89 N.J. 347, 355-56 (1982). Therefore, the burden is on the State to establish that there is a substantial likelihood the inmate will commit a crime if released on parole at such time. See Trantino V, 166 N.J. at 197.

The Board's determination of parole eligibility must be "based on the aggregate of all pertinent" evidence, including twenty-three enumerated, but

non-exhaustive, factors. N.J.A.C. 10A:71-3.11(a) to (b). There is, however, no requirement that the Board consider each of the enumerated factors; rather, the Board should consider those "applicable in each case." McGowan, 347 N.J. Super. at 561.

Here, the two-member panel found several mitigating factors. The panel noted that Presher had participated in institutional programs and programs specific to his behavior. The panel stated that institutional reports "reflect institutional adjustment." Presher also had attempted to enroll and participate in certain programs, but he had not been admitted. In addition, he had achieved and maintained minimum-custody status,[1] and commutation time had been restored.

The panel found, however, that parole should be denied. The panel identified the following reasons for its decision: (1) the facts and circumstances of the offense; (2) Presher's prior offense record is extensive; (3) his offense record is repetitive; (4) the nature of Presher's criminal offenses had become increasingly more serious; (5) he is incarcerated for multiple offenses; (6) he

---

[1] According to the administrative code, "[i]nmates classified as 'full minimum custody status' are" those inmates that are assigned to: "work details, jobs or programs outside the main correctional facility . . . , with minimal supervision; and/or . . . [a] satellite unit or minimum security unit." N.J.A.C. 10A:9-4.3(e).

A-4126-18T2

committed new offenses while on probation; (7) prior opportunities for probation failed to deter further criminal behavior; (8) he violated the conditions of probation; (9) he committed numerous institutional infractions, which were serious in nature and the last infraction occurred on March 17, 1992; and (10) he had insufficient problem resolution, including a lack of insight into his criminal behavior and a failure to sufficiently address his substance abuse problem.

The panel stated that Presher "continues to demonstrate a lack of ability to understand and address his criminal thinking and substance abuse issues which were at the root of his commitment offenses. Despite programming[,] he still demonstrates a lack of tools to address his thinking and behaviors while on supervision." The panel also stated that Presher did not have an adequate parole plan, and considered his risk assessment evaluation. On April 25, 2018, the panel amended its notice of decision to add another reason for denying parole, specifically that Presher's opportunity for probation had been terminated because he committed new offenses.

In addition, the panel noted that after thirty years of incarceration, Presher had not demonstrated an adequate understanding of his negative behavioral choices that have affected his behavior since he was a juvenile. The panel found

10

that Presher has not made sufficient rehabilitative progress with respect to a significant aspect of his criminal behavior.

The panel observed that Presher began to abuse alcohol and drugs at a young age and this was a factor in his "criminality." The panel found that Presher did not have an understanding of his addiction and lacked "adequate drive" to understand it. He presented as "unmotivated to fully prepare [him]self to address this factor in preparation for potential release."

The panel further stated that additional "work and effort" was needed "to address these[] deficiencies . . . ." In addition, the panel took note of Presher's institutional infractions, which included an attempt or plan to escape for which he had been sanctioned with administrative segregation and the loss of 300 days of commutation credits.

In its decision, the Board noted that while Presher has served sufficient time to satisfy the punitive aspects of his sentence, this does not mean he is eligible for parole. The Board found, that in denying parole, the panel had "appropriately determined that [Presher] exhibit[s] insufficient problem resolution, specifically, that [he] lack[s] insight into [his] criminal behavior and [his] substance abuse problem has not been sufficiently addressed." The Board

11

added that although Presher "ha[s] been involved in treatment, [he] ha[s] gained little insight from these programs."

The Board also found that Presher had made "some progress," but his criminal behavior is deeply rooted. The Board pointed out that Presher's "extensive" criminal record extends back to 1984, and he has also committed numerous institutional infractions. The Board noted that Presher has a "very limited employment history and an extensive poly-substance abuse history" beginning at age eleven. The Board agreed with the panel's finding that there is a "substantial likelihood" Presher would commit another crime if released on parole.

We are convinced the Board's decision to deny parole was "based on the aggregate of all pertinent" evidence, including the applicable mitigating factors noted in its decision. N.J.A.C. 10A:71-3.11(a) to (b). There is sufficient credible evidence in the record to support the Board's findings, and the Board's decision was not arbitrary, capricious or unreasonable.

III.

Presher argues that the Board erred by establishing a ninety-six-month FET. He notes that the presumptive FET is twenty-seven months. He states "[w]hat does the Board expect [him] to accomplish [in] that period of time that

he could not accomplish in a lesser amount of time?"  He asserts that, because he is fifty-one years old, the FET is akin to a death sentence.

N.J.A.C. 10A:71-3.21(a)(1) establishes a presumptive FET of twenty-seven months for an individual convicted of murder serving a sentence greater than fourteen years.  N.J.A.C. 10A:71-3.21(d) further provides that a three-member panel may establish a different FET if the presumptive FET "is clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior."  In making that determination, the panel "shall consider the factors enumerated in N.J.A.C. 10A:71-3.11."  N.J.A.C. 10A:71-3.21(d).

Here, the three-member panel identified the reasons for the imposition of the ninety-six-month FET and concluded that Presher "remain[s] a threat to public safety."  The panel found that Presher does not sufficiently understand the "negative behavioral choices" he has made from a young age.  The panel pointed out that Presher has not made sufficient progress in the rehabilitative process regarding his criminal behavior.

The panel also noted that Presher did not have an understanding of his substance abuse problem and "lack[s] adequate drive" to further understand it. The panel stated that Presher has committed serious institutional infractions,

13

which include attempted or planned escape. The Board concurred with the three-member panel's reasoning and decision.

We reject Presher's contention that because he is fifty-one years old, the FET is tantamount to a "death sentence." As the three-member panel noted in its decision, the FET will be reduced by commutation, work, and minimum custody credits. His projected parole eligibility date is in June 2023. We are constrained to point out that Presher was sentenced to life imprisonment. There is no assurance he will meet the standard for parole when he next becomes eligible for parole.

We are convinced that in establishing the FET, the Board applied the correct legal standard and considered the factors identified in N.J.A.C. 10A:71-3.11. We conclude there is sufficient credible evidence in the record to support the Board's findings of fact and the ninety-six-month FET is not arbitrary, capricious or unreasonable.

IV.

Presher further argues that we should not follow Acoli. He contends we should order his release on parole, instead of remanding the matter to the Board for further proceedings. He contends remanding this case would allow the Board to "ignore the [c]ourt and get a second bite at the release apple[,]" and likens

14

such a process to a violation of the constitutional prohibition against double jeopardy.

In Acoli, the Board previously had denied Acoli's application for parole twice. 224 N.J. at 216. On his third application, the two-member panel again denied parole, and the three-member panel established a 120-month FET. Id. at 218. Acoli filed an administrative appeal, and the Board considered the record developed by the hearing officer and panels but did not conduct a full hearing. Ibid. The Board again denied parole and Acoli appealed. Id. at 219.

In an unpublished opinion, we ordered the Board to "expeditiously set conditions for . . . parole" and declined to remand the matter to the Board. Ibid. The Supreme Court granted the Board's petition for certification, and the Board argued that this court erred by ordering Acoli's parole rather than a hearing before the full Board, pursuant to N.J.S.A. 30:4-123.55(f). Ibid. The Court agreed and remanded the matter to the Board for an evidentiary hearing and determination as to the inmate's "suitability for parole release." Id. at 232.

In this case, we have determined that there is sufficient credible evidence in the record for the Board's findings of fact and that the Board's decision to deny parole and establish a ninety-six-month FET is not arbitrary, capricious, or unreasonable. The Board's procedures complied with the applicable statutes, as

interpreted in <u>Acoli</u>.  There is no reason to remand the matter to the Board for further proceedings.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4126-18T2