**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0625-22

RANDY JOHNSON,
a/k/a BOSCO,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted January 17, 2024 – Decided February 12, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the New Jersey State Parole Board.

Randy Johnson, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Christopher Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Randy Johnson, self-represented, appeals from a September 22, 2022 New Jersey State Parole Board (Board) decision denying his parole and establishing a sixty-month future eligibility term (FET). We affirm.

I.

In 1984, Johnson, while on parole, robbed a furniture store in Jersey City with an accomplice. During the robbery, Johnson shot two brothers who were working at their family's store. One was shot in the arm while lying on the floor, and the other was fatally shot in the back as he attempted to flee.

In December 1985, Johnson was convicted of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); two counts of second-degree robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). Following merger, the judge sentenced Johnson to life imprisonment with a thirty-year period of parole ineligibility for felony murder to be served consecutively to a seven-year sentence with a three year and four-month period of parole ineligibility for robbery.

During his incarceration, Johnson committed seventeen institutional infractions. The infractions included six "asterisk" prohibited acts, which were

2

considered the most serious offenses.  See N.J.A.C. 10A:4-4.1.  As a result, Johnson received sanctions including the loss of approximately 491 days of commutation credits.  Between 1999 and 2021, Johnson completed various programs, such as "Behavior Modification," "Substance Abuse Program," "Employment Readiness," "Reentry Preparation," "Anger Management," "Focus on the Victim," and reading courses.

Johnson was denied parole when he was first eligible.  On December 8, 2021, Johnson again became eligible for parole and received an initial hearing.  A hearing officer referred the matter to a board panel for review.

On January 27, 2022, a two-member board panel denied parole after a hearing, determining "a substantial likelihood exist[ed] that [Johnson] would commit a new crime if released on parole at th[at] time."  The panel found the following factors in the aggregate in denying parole:  (1) the "[f]acts and circumstances of" the murder offense; (2) an extensive prior offense record; (3) a repetitive offense record; (4) "[p]rior offense record noted"; (5) "[n]ature of criminal record increasingly more serious"; (6) "[c]ommitted to incarceration for multiple offenses"; (7) "[c]ommitted new offense(s) on community supervision [(parole)]" but his "status [was] not formally . . . revoked"; (8) "[p]rior opportunit[ies] on community supervision [(probation and parole)] . . .

failed to deter criminal behavior"; (9) "[p]rior opportunit[ies] on community supervision [(parole)]" had "been . . . revoked in the past for technical violation(s)"; (10) "[p]rior incarceration(s) did not deter his criminal behavior"; (11) commission of "numerous," "persistent," and "serious in nature" institutional infractions, resulting in "loss of commutation time[,] confinement in detention . . . [or] [a]dministrative segregation," with the last infraction occurring on May 22, 2017; (12) the confidential "risk assessment evaluation"; and (13) "[i]nsufficient problem(s) resolution." After considering his interview, the case file documentation, and the confidential professional report and material, regarding his insufficient problem resolution, the panel specifically found Johnson lacked insight into his criminal behavior. The panel reasoned that he "continue[d] to justify his points by using criminal thinking and rationale," "offer[ed] little true remorse in the victims of his crime" and "justified [his] criminal behavior."

Regarding mitigating factors, the panel found Johnson: was "[i]nfraction free since [the] last panel"; "[p]articipat[ed] in program(s) specific to behavior"; "[p]articipat[ed] in institutional program(s)"; and had "[i]nstitutional reports [which] reflect[ed] favorable institutional adjustment." After considering the mitigating factors, the panel found the reasons for denial weighed more heavily

4

and denied parole. The matter was referred to a three-member board panel to establish a FET.

Johnson appealed the determination. The Board advised that because a FET had not yet been established by the three-member panel, the appeal would proceed after the determination. On April 5, the two-member panel issued an amended notice of decision to include Johnson's restored commutation time as a mitigating factor, which was not reflected in the original panel decision.

On May 18, after a review of the record and Johnson's letter of mitigation, the three-member panel established a sixty-month FET. In its ten-page decision, the panel largely adopted the two-member panel's findings. The panel extended the FET to sixty-months from the presumptive term because Johnson: lacked an "understanding or acknowledg[ment of] the extent of [his] criminal thinking"; "downplayed criminal actions" in the felony murder; had "little empathy or remorse"; and had "not put forth a positive effort in the rehabilitative process."

Upon Johnson's appeal, the full Board reviewed the record and considered Johnson's arguments, finding substantial support for the denial of parole and the sixty-month FET. The Board found Johnson "continue[d] to remain a substantial threat to public safety." The Board also found that Johnson failed to demonstrate an "understanding or acknowledg[ment of] the extent of [his]

5

criminal thinking," "present[ed] as having little empathy or remorse," "had not put forth a positive effort in the rehabilitative process," and "at best," "minimal[ly]" participated in programming. The Board specifically adopted the panels' findings. Further, the Board concluded a substantial likelihood existed that Johnson would commit another offense if released and that the extended FET was appropriate.

Johnson raises the following points on appeal:

POINT I

THE BOARD DID NOT JUSTIFY THE DENIAL OF PAROLE.

POINT II

THE BOARD DID NOT CONSIDER [JOHNSON]'S AGE OR HEALTH.

POINT III

THE BOARD DID NOT CONSIDER INFORMATION.

POINT IV

A LIFE SENTENCE SHOULD NOT BE A DEATH PENALTY.

POINT V

THE FULL BOARD DID NOT FOLLOW THEIR OWN RULES.

6

II.

We conduct a limited and deferential review of a Parole Board's decision. See Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179-80 (App. Div. 2004). "Appellate review of parole determinations 'focuses upon whether the factual findings made by the Parole Board could reasonably have been reached on sufficient credible evidence in the record.'" Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 193 (App. Div. 2019) (quoting Trantino v. N.J. State Parole Bd., 166 N.J. 113, 199 (2001)).

The Parole Board, however, does not exercise "unlimited or absolute" discretionary power. Acoli v. N.J. State Parole Bd., 250 N.J. 431, 455 (2022). Accordingly, we "will reverse a decision of the Board only if the offender shows that the decision was arbitrary or unreasonable, lacked credible support in the record, or violated legislative policies." K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1, 30 (App. Div. 2019). The appellant carries "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious." Bowden v. Bayside State Prison (Dep't of Corr.), 268 N.J. Super. 301, 304 (App. Div. 1993). Board decisions are "accorded a strong presumption of reasonableness." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

However, we review questions of law de novo.  See Perry, 459 N.J. Super. at 193-94.

Under the Parole Act of 1979, which governs Johnson's parole because his offenses were committed in 1984, the Board "must determine by a preponderance of the evidence whether there is a substantial likelihood the inmate will commit another crime if released."  Hare, 368 N.J. Super. at 180; N.J.S.A. 30:4-123.53 (1979).  A substantial likelihood "requires a finding that is more than a mere probability and considerably less than a certainty."  Acoli, 250 N.J. at 456.

"N.J.A.C. 10A:71-3.11(a) provides that the grant or denial of parole must 'be based on the aggregate of all pertinent factors.'"  Id. at 457; see also Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 360 ("Common sense dictates that [the Board's] prediction as to future conduct . . . be grounded on due consideration of the aggregate of all of the factors which may have any pertinence.").  "That regulation sets forth a list of twenty-four factors that the Parole Board 'shall consider,' in addition to other factors it may deem relevant, in making a parole decision."  Acoli, 250 N.J. at 457 (quoting N.J.A.C. 10A:71-3.11(b)).  As the Supreme Court in Acoli explained:

> Some of those factors include:  facts and circumstances related to the underlying crime; offenses

A-0625-22

and disciplinary infractions committed while incarcerated; participation in institutional programs and academic or vocational education programs; documentation reflecting personal goals, personal strengths or motivation for law-abiding behavior; mental and emotional health; parole plans; availability of community resources or support services; statements by the inmate reflecting on the likelihood that he will commit another crime; the failure to rehabilitate; history of employment and education; and statement or testimony of any victim.

[Id. at 441 (citing N.J.A.C. 10A:71-3.11(b)).]

III.

We reject Johnson's argument that the Board failed to "justify the denial of [his] parole." The Board's decision, finding sufficient evidence supported denial of Johnson's parole, addressed each of Johnson's arguments in consideration of the record. In reviewing the two-member panel's decision, the Board correctly noted the panel properly considered Johnson's statements that reflected "on the substantial likelihood that [he] will commit another crime" pursuant to N.J.A.C. 10A:71-3.11(b)(17). The Board appropriately considered the panel's determination that Johnson's statements demonstrated "insufficient problem resolution," "[a] lack [of] insight" into his criminal behavior, and "little true remorse for the victims of" his crime. The Board contemplated in its decision "the aggregate of all pertinent factors." See N.J.A.C. 10A:71-3.11(a).

Johnson argues for the first time on appeal that the Board did not consider his confidential psychological evaluation which resulted in a "recommendation" that he "be sent to a [h]alfway [b]ack program." We generally decline to consider issues not presented below when an opportunity for such a presentation is available unless the questions raised on appeal concern jurisdiction or matters of great public interest. State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Nevertheless, a review of the evaluation demonstrates it did not recommend parole. The evaluation indicated Johnson was a "medium" risk to reoffend, and "if eligible[,] there [we]re no psychological reasons why parole and status should be denied . . . if his re-entry to society [wa]s done carefully through a halfway back process." (Emphasis added).

Further, contrary to Johnson's argument that the Board "incorrect[ly]" viewed his participation in institutional programs, the record supports the Board's finding that his institutional program attendance was "minimal at best." Since 1999, Johnson only participated in four behavioral or cognitive programs. While Johnson participated in "substance abuse programing," the Board noted his last infraction for possession of drugs occurred in 2017 and program

10

attendance was only "one factor of many considered." Further, the Board correctly acknowledged Johnson's "participation in institutional programs and programs specific to behavior, as well as [his] favorable institutional adjustment" were "mitigating factors."

Lastly, we are unpersuaded by Johnson's contention that the Board failed to account for his age and health in considering parole and establishing the FET. The Board noted his age and considered his health issues as documented in "a medical report furnished by the Department of Corrections." As the Board observed, the medical report indicated Johnson used a cane. In finding that Johnson had a substantial likelihood to reoffend and the FET imposed was appropriate, the Board balanced his age and the medical findings against his lack of insight into his offenses, history of institutional infractions, minimal participation in institutional programs, and lack of remorse and empathy. Thus, we conclude the Board was well within its discretion to affirm the denial of parole. See Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 302 (App. Div. 2022) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)). The Board was also well within its discretion to affirm the imposed FET. See, e.g., McGowan, 347 N.J. Super. at 565 (upholding the establishment of a thirty-year FET).

To the extent not addressed, Johnson's remaining arguments lack sufficient merit to warrant discussion in our written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION