**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3471-22

DERRICK ROUNDTREE,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted October 23, 2024 – Decided November 8, 2024

Before Judges Mayer and DeAlmeida.

On appeal from the New Jersey State Parole Board.

Derrick Roundtree, appellant pro se.

Matthew Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Derrick Roundtree appeals from the January 25, 2023 final agency decision of the New Jersey State Parole Board (Board) denying him parole and establishing a 144-month future eligibility term (FET). We affirm.

I.

In 1996, Roundtree approached a man who was leaning into his car in East Orange. He tapped the victim on the shoulder, asked how much the car was worth and then said, "rise the fuck out." The victim observed Roundtree with his hands inside his waistband with a black gun in his hand. The victim escaped as Roundtree drove off in the victim's car.

A short time later, police discovered Roundtree in the car. He fled on foot, but was apprehended hiding in a cabinet in a basement of a nearby home. A witness saw Roundtree carrying a handgun as he fled. The handgun was later found in the home where Roundtree had been hiding.

A jury convicted Roundtree of first-degree carjacking, N.J.S.A. 2C:15-2, third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The trial court sentenced Roundtree to an aggregate fifty-year term of imprisonment, with an eighteen-year period of parole ineligibility.

A-3471-22

On February 2, 2022, Roundtree became eligible for parole for the second time. At that point, he had served more than twenty-five years in prison.

On February 4, 2022, a two-member Board panel conducted a hearing on Roundtree's parole application. The panel considered Roundtree's extensive criminal history. As a juvenile, he was adjudicated delinquent eleven times for offenses that if committed by an adult would be aggravated assault, simple assault, terroristic threats, burglary, escape, robbery, receiving stolen property, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. Roundtree served two terms of juvenile incarceration. He also was sentenced to three terms of probation and violated probation twice by committing new offenses.

As an adult, Roundtree was convicted of assault, escape, robbery, theft, and possession of a controlled dangerous substance prior to the carjacking. He served two prior terms of incarceration, two prior periods on parole, and one prior term of probation.

During his incarceration, Roundtree accumulated forty-six disciplinary infractions between April 1997 and May 2021. Twenty-two of those infractions were "asterisk" offenses, the most serious disciplinary charges in prison. N.J.A.C. 10A:4-4.1(a). Since his last parole hearing in October 2013, Roundtree

accumulated sixteen disciplinary infractions, of which ten were asterisk offenses, including: attempted assault, two incidents of threatening another with bodily harm, two incidents of fighting with another person, three incidents of conduct which disrupts, and two incidents of refusing to submit to a search. At the time of the hearing, Roundtree's most recent disciplinary adjudication was for fighting with another person. The sanctions imposed for Roundtree's disciplinary infractions included detention, administrative segregation, and the loss of 3,075 days of commutation credits.

The panel questioned Roundtree about his present crimes, criminal thinking and conduct related to those crimes, his lifestyle and social and personal choices that led to his extensive and repetitive criminal record, his significant and serious prison disciplinary history, and his participation while incarcerated in programs that may have provided insight into his criminal thinking and conduct. The panel's objective when posing those questions was to determine whether Roundtree had "developed interpersonal skills, along with the ability to use proper judgment and exercise control in stressful situations."

The panel determined Roundtree still struggled with his criminal thinking and conduct, and minimized the severity of his actions. The panel found that Roundtree still exhibited criminal conduct and non-compliant behavioral

A-3471-22

patterns, despite twenty-six years of incarceration, his older age, and his completion of behavioral and therapeutic programs. Roundtree was, according to the panel, unable to articulate the motivations and triggers that led him to engage in criminal conduct. Instead, he provided excuses and false narratives, and redirected blame for his actions.

The panel noted Roundtree's prison sentence would have expired before the date of the hearing had he not lost approximately eight and a half years of commutation credits as sanctions for his extensive disciplinary infractions. In response, Roundtree stated he had "made a mistake" and was ready to go home, but understood his infractions "make[] you look . . . bad in front of" the Board.

The panel questioned Roundtree with respect to his refusal to submit to searches in 2019. He failed to provide meaningful insight into these infractions. The disciplinary record indicates that when directed to submit to a search prior to being transported to a medical appointment, Roundtree stated, "[t]hat's gay. I'm not doing that." When questioned about that remark at the parole hearing, Roundtree disputed the accuracy of the disciplinary record. He took a similar approach when questioned about other disciplinary infractions, stating about the disciplinary records, "[i]f that's what they say, man there's nothing I can change to make them say it (sic)."

The panel noted Roundtree was infraction free for a twenty-month period between 2016 and 2017 and completed rehabilitative and cognitive programs in prison, including the "Cage Your Rage" program. However, the panel noted Roundtree committed disciplinary infractions after completing the programs.

The panel also discussed Roundtree's removal from a substance abuse treatment program. When asked why he was removed from the program, Roundtree provided explanations inconsistent with prison records. Roundtree stated he was discharged from the program either for having bleach and wax in his cell or for refusing an order to turn down his radio. Prison records, however, established that Roundtree was discharged from the program for refusing to obey a staff member's order to lower his voice while singing and instead raising his voice even louder. The panel found this conduct highlighted Roundtree's tendency to "antagonize others." Roundtree agreed with that observation and stated he was "practicing" not reacting to others in that fashion. Roundtree admitted if the panel denied his release on parole he might be charged with another disciplinary infraction because he is "a human being."

The panel also considered institutional reports indicating a favorable institutional adjustment, Roundtree's attempts to enroll in programs to which he

6

was not admitted, and the restoration of commutation time during infraction-free periods.

On February 4, 2022, the two-member panel denied Roundtree release on parole and referred the matter to a three-member panel to establish an FET outside of the administrative guidelines. The two-member panel based its decision on: (1) the facts and circumstances of Roundtree's criminal offenses; (2) his extensive and repetitive criminal record; (3) the increasingly serious nature of his criminal offenses; (4) his incarceration on multiple offenses; (5) his failure to refrain from criminal activity despite prior periods of probation and incarceration; (6) his numerous, persistent, and serious institutional infractions while incarcerated; (7) his commission of disciplinary infractions after his last parole hearing; and (8) his insufficient problem solving, including a lack of insight into his criminal behavior and minimization of his conduct. The two-member panel also relied on confidential information, which included a comprehensive mental health evaluation conducted specifically to determine whether Roundtree was fit for release on parole, see N.J.A.C. 10A:71-2.2(c), as well as a risk assessment evaluation indicating a high risk of recidivism.

After Roundtree submitted a letter of mitigation, the two-member panel issued an amended decision. It noted: (1) on December 9, 1985, Roundtree was

sentenced to probation for a term of two years; (2) on February 21, 1987, Roundtree was sentenced to probation for a term of one year, which he violated; (3) on June 26, 1987, Roundtree committed burglary while on probation, and was sentenced to another one-year term of probation for that offense; and (4) on March 25, 1988, Roundtree was sentenced to an indeterminate term for multiple offenses committed while on probation. The panel's substantive decision did not change.

On May 18, 2022, a three-member Board panel established a 144-month FET. The panel explained its reasoning in a comprehensive and detailed eleven-page decision. The panel's reasons for imposition of the FET included Roundtree's: (1) lack of understanding of the underlying dynamics of his personality defects that led him to engage in criminal thinking and conduct; (2) inadequate progress in the rehabilitation process; (3) continued commission of serious and extensive institutional infractions; (4) lack of understanding of the motivations and triggers that result in his use of poor judgment and criminal behavior; and (5) failure to take accountability for his poor judgment and criminal conduct.

On January 25, 2023, the Board issued a final agency decision affirming the denial of parole and the imposition of a 144-month FET. The Board adopted

the findings of the two-member and three-member panels and found that there was a substantial likelihood that Roundtree would commit another crime if released on parole. The Board noted that Roundtree's criminal behavior was "deeply rooted," as evidenced by his extensive criminal record and continuing institutional infractions. The Board also found that, although Roundtree may have made some progress, his efforts at rehabilitation were insufficient. The Board noted Roundtree had a serious and extensive substance abuse history beginning when he was seventeen and committed the carjacking while under the influence of cocaine.

This appeal followed. Defendant raises the following argument

> THE FINAL ADMINISTRATIVE DECISION OF THE NEW JERSEY STATE PAROLE BOARD DENYING PAROLE WAS NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE IN THE RECORD AND AMOUNTED TO A DENIAL OF APPELLANT'S RIGHT TO DUE PROCESS[.] THEREFORE, THE FET SHOULD BE VACATED AND A NEW PAROLE HEARING SHOULD BE ORDERED.

II.

We accord considerable deference to the Board, and our review of its decision is limited. Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). We will overturn a Board decision only if it is arbitrary and capricious. Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 193 (App. Div. 2019). An

9

appellate court must not substitute its judgment for that of the agency, and an agency's decision is accorded a strong presumption of reasonableness. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). The burden of showing that an action was arbitrary, unreasonable, or capricious rests upon the appellant. Barone v. Dep't of Human Servs., 210 N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987).

For offenses committed before August 18, 1997, "the Parole Board may deny parole release if it appears from a preponderance of the evidence that 'there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.'" Williams v. N.J. State Parole Bd., 336 N.J. Super. 1, 7 (App. Div. 2000) (quoting L. 1979, c. 441, § 9). When reaching a decision under this standard, the Board must consider the aggregate of all pertinent factors, including those set forth in N.J.A.C. 10A:71-3.11(b).

In addition, an inmate serving a sentence for carjacking is ordinarily assigned a twenty-seven-month FET after a denial of parole. See N.J.A.C. 10A:71-3.21(a)(1). The Board may increase or decrease the standard FET "by up to nine months when, in the opinion of the Board panel, the severity of the crime for which the inmate was denied parole and the prior criminal record or other characteristics of the inmate warrant such adjustment." N.J.A.C. 10A:71-

10

3.21(c). However, a panel may establish an FET outside these guidelines if the presumptive FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d). In making that determination, the panel shall consider the same non-exhaustive factors enumerated in N.J.A.C. 10A:71-3.11(b) that are considered when determining suitability for parole.

Significantly, the 144-month FET commences on Roundtree's parole eligibility date and, because he committed his crimes prior to August 19, 1997, his FET can be reduced by commutation, work, and minimum custody credits. Based on the application of Roundtree's credits at the time the Board filed its brief, Roundtree's parole eligibility date is August 29, 2030. This date will be further reduced by the application of any work and minimum custody credits Roundtree earns in the future, resulting in a possible parole eligibility date of August 31, 2029. Thus, Roundtree's actual FET will be substantially less than 144 months.

After carefully considering the record in light of the applicable legal principles, we affirm the Board's well-reasoned final agency decision, which is supported by sufficient credible evidence. R. 2:11-3(e)(1)(D). We add only the following brief comments.

We disagree with Roundtree's argument that the Board's decision is based primarily on his juvenile record. While the Board considered Roundtree's extensive history of juvenile delinquency, the record demonstrates the Board also relied on numerous other factors, including Roundtree's extensive adult criminal history, lengthy and continuing prison disciplinary record, lack of insight into the motivations and triggers leading to his criminal behavior, and a risk assessment evaluation indicating a high risk for recidivism.

Nor do we see support in the record for Roundtree's argument that the three-member panel and the Board failed adequately to explain the basis for their imposition of a 144-month FET. The decisions of those entities provide detailed explanations for their conclusions that an FET outside of the guidelines was warranted.

To the extent we have not addressed other arguments raised by Roundtree, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION