**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1461-22

STEPHEN FAIRHURST,

    Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

    Respondent.

_____

Submitted April 16, 2024 – Decided May 1, 2024

Before Judges Rose and Perez Friscia.

On appeal from the New Jersey State Parole Board.

Stephen Fairhurst, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Stephen Fairhurst, self-represented, appeals from an October 26, 2022 New Jersey State Parole Board (Board) decision denying his parole and establishing a ninety-month future eligibility term (FET). We affirm.

I.

In 1992, Fairhurst fatally strangled a man he had joined in a hotel room in Atlantic City. In October 1992, after a jury trial, defendant was convicted of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(c); first-degree robbery, N.J.S.A. 2C:15-1; and third-degree credit card theft, N.J.S.A. 2C:21-6(d). Following merger, the trial judge sentenced Fairhurst to life imprisonment with a thirty-year period of parole ineligibility for felony murder and to a consecutive four-year sentence for credit card theft. Fairhurst was twenty-two years old when he committed the offenses.

While incarcerated, Fairhurst committed twenty-seven institutional infractions, which resulted in various sanctions. The infractions included thirteen "asterisk" prohibited acts.[1] His most recent disciplinary infraction

_____

[1] "An inmate who commits one or more . . . prohibited acts shall be subject to disciplinary action and a sanction. . . . Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

occurred in December 2016. Fairhurst completed educational work including: "Thinking for a Change"; "Cage Your Rage"; Narcotics Anonymous and Alcoholics Anonymous meetings; a computer science course; a general educational development test; and a "[b]achelor's degree in [p]sychology."

In 2021, Fairhurst became eligible for parole and received an initial hearing on September 24. A hearing officer referred the matter to a two-member panel for review.

On November 8, 2021, the two-member panel denied parole after a hearing, determining Fairhurst "continue[d] to demonstrate criminal thinking and behavior" and "a likelihood . . . exist[ed] that [he] w[ould] commit another crime." The panel found the following aggravating factors: (1) the "[f]acts and circumstances of" the murder offense; (2) an extensive prior offense record; (3) a repetitive offense record; (4) "[p]rior offense record noted"; (5) "[n]ature of criminal record increasingly more serious"; (6) "[c]ommitted to incarceration for multiple offenses"; (7) "[p]rior incarceration(s) did not deter [his] criminal behavior"; (8) commission of "numerous," "persistent," and "serious in nature" institutional infractions, resulting in "loss of commutation time[,] confinement in detention[,] . . . [or] [a]dministrative [s]egregation," with the last infraction occurring on December 17, 2016; (9) the confidential "[r]isk assessment

evaluation"; and (10) "[i]nsufficient problem(s) resolution."  The panel also found mitigating factors:  (1) "[p]articipation in program(s) specific to behavior"; (2) "[p]articipation in institutional program(s)"; (3) "[i]nstitutional reports reflect favorable institutional adjustment"; (4) "[a]ttempt made to enroll and participate in program(s) but was not admitted"; (5) "[m]inimum custody status achieved/maintained"; and (6) "[c]ommutation time restored."  After considering his interview, the case file documentation, and the confidential evaluation, the panel denied parole.  The panel referred Fairhurst's case to a three-member panel for the establishment of a FET.

On January 19, 2022, after reviewing the record and the letters of mitigation submitted on Fairhurst's behalf, the three-member panel established a ninety-month FET.  In its ten-page decision, the panel largely adopted the two-member panel's findings.  The panel extended the FET from the presumptive term because Fairhurst:  lacked "substantive insight into [his] criminal thinking"; "made only marginal progress in the rehabilitative process to ensure criminal behavior and decision-making d[id] not occur again in the future"; committed twenty-seven infractions which resulted in sanctions including "placement in detention, [a]dministrative [s]egregation, and the loss of 2,280 days commutation credits."

4

After Fairhurst appealed, the Board reviewed the record and considered his arguments, finding sufficient support for the denial of parole and the ninety-month FET. Specifically adopting the panels' findings, the Board found: the twenty-seven institutional infractions were a "serious concern"; Fairhurst demonstrated a "lack of satisfactory progress in reducing future criminal behavior" based on a review of the record; the risk assessment evaluation indicated "a moderate risk of recidivism"; and there existed a substantial likelihood he would commit a crime if released on parole. The Board noted his rehabilitation efforts but determined they did not outweigh the factors militating against parole, including his infraction history. Further, the Board concluded the extended FET was appropriate because Fairhurst demonstrated "only superficial and generic reasons" for his drug use, and a "superficial understanding of [his] criminal thinking" after committing the numerous infractions.

On appeal, Fairhurst raises the following points:

POINT I

THE PAROLE BOARD IMPROPERLY EQUATED OFFENSES THAT WOULD NOT BE CONSIDERED CRIMES UNDER THE LAWS OF THE STATE OF NEW JERSEY AS EVIDENCE OF CRIMINALITY.

POINT II

THE STATE PAROLE BOARD'[S] FAILURE TO ADDRESS CRITICAL ISSUES, OR TO ANALYZE THE EVIDENCE IN LIGHT OF THOSE ISSUES, RENDERS THE [BOARD]'S DECISION ARBITRARY, CAPRICIOUS AND UNREASONABLE.

POINT III

THE DECISION TO DENY . . . FAIRHURST PAROLE AND ESTABLISH A [FET] OUTSIDE OF THE ADMINISTRATIVE GUIDELINES BASED UPON DISCIPLINARY ADJUDICATIONS IS IN CONTRAVENTION TO THE UNITED STATES CONSTITUTION'S [FIFTH] AMENDMENT PROTECTION AGAINST DOUBLE JEOPARDY.

II.

We conduct a limited and deferential review of a Parole Board's decision. See Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179-80 (App. Div. 2004). "Appellate review of parole determinations 'focuses upon whether the factual findings made by the Parole Board could reasonably have been reached on sufficient credible evidence in the record.'" Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 193 (App. Div. 2019) (quoting Trantino v. N.J. State Parole Bd., 166 N.J. 113, 199 (2001)).

The Parole Board, however, does not exercise "unlimited or absolute" discretionary power. Acoli v. N.J. State Parole Bd., 250 N.J. 431, 455 (2022).

6

Accordingly, "[w]e will reverse a decision of the Board only if the offender shows that the decision was arbitrary or unreasonable, lacked credible support in the record, or violated legislative policies." K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1, 30 (App. Div. 2019). The appellant carries "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious." Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993). Board decisions are "accorded a strong presumption of reasonableness." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002). However, we review questions of law de novo. See Perry, 459 N.J. Super. at 193-94.

Under the Parole Act of 1979, which governs Fairhurst's parole because his offenses were committed in 1991, the Board "must determine by a preponderance of the evidence whether there is a substantial likelihood the inmate will commit another crime if released." Hare, 368 N.J. Super. at 180; N.J.S.A. 30:4-123.53 (1979); see also Acoli, 250 N.J. at 456 & n.12. A substantial likelihood "requires a finding that is more than a mere probability and considerably less than a certainty." Acoli, 250 N.J. at 456.

"[T]he grant or denial of parole must 'be based on the aggregate of all pertinent factors.'" Id. at 457 (quoting N.J.A.C. 10A:71-3.11(a)); see also

Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 360 (1973) ("Common sense dictates that [the Board's] prediction as to future conduct . . . be grounded on due consideration of the aggregate of all of the factors which may have any pertinence.").  "That regulation sets forth a list of twenty-four factors that the Parole Board 'shall consider,' in addition to other factors it may deem relevant, in making a parole decision."  Acoli, 250 N.J. at 457 (quoting N.J.A.C. 10A:71-3.11(b)).  As the Supreme Court in Acoli explained:

> Some of those factors include:  facts and circumstances related to the underlying crime; offenses and disciplinary infractions committed while incarcerated; participation in institutional programs and academic or vocational education programs; documentation reflecting personal goals, personal strengths or motivation for law-abiding behavior; mental and emotional health; parole plans; availability of community resources or support services; statements by the inmate reflecting on the likelihood that he will commit another crime; the failure to rehabilitate; history of employment and education; and statement or testimony of any victim.
>
> [Id. at 441 (emphasis added) (citing N.J.A.C. 10A:71-3.11(b)).]

                                        III.

We address together Fairhurst's contentions, raised in points I and II, that reversal of his denial of parole or alternatively a reduction of his FET is warranted.  Fairhurst argues the Board wrongly "equated institutional

disciplinary adjudications with criminality" and failed to address "critical issues" by not explaining "why disciplinary adjudications are . . . equivalent to criminal convictions." As Fairhurst conceded, he committed numerous "disciplinary infractions" consisting of at least twenty-seven institutional adjudications, including thirteen asterisk and fourteen non-asterisk prohibited acts. He asserts most infractions stemmed from his long history of substance abuse. Because his infractions were nonindictable offenses and the Board found he "continues to demonstrate criminal thinking and behavior," Fairhurst argues the Board wrongly analyzed his offenses as criminal conduct without explanation.

The Board correctly acknowledged that, under N.J.A.C. 10A:71-2.10, it was statutorily authorized to consider "the final decision[s] of the Department's officials responsible for adjudication of institutional infractions to be res judicata." It is recognized that under N.J.S.A. 30:4-123.53(a), the Board generally grants parole requests for release on an inmate's parole date unless there is a "reasonable expectation that the inmate will violate conditions of parole," which is demonstrated by "a preponderance of the evidence." The Board is charged with "mak[ing] 'highly predictive and individualized discretionary appraisals.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222

9

(2016) (quoting Beckworth, 62 N.J. at 359). Thus, we discern no error in the Board's consideration of the twenty-seven committed infractions.

In determining whether Fairhurst was eligible for parole, the Board considered the relevant factors under N.J.A.C. 10A:71-3.11(b)(1) to (24). The Board found "the recording of [Fairhurst's parole] hearing reflect[ed] that [he] indicated . . . that none of [his] institutional infractions involve[d] violence," but noted that the twenty-seven institutional infractions were "of serious concern as a majority of the asterisk infractions [we]re drug-related." Further, the Board determined that after thirty years of incarceration, Fairhurst did not have insight into the "personality defects that influence[d] [his] drug use . . . result[ing] in criminal behavior" and he provided only "superficial and generic reasons for [his] drug use." The Board concluded by a preponderance of the evidence that there was "a substantial likelihood that [Fairhurst] would commit [another] crime if released." Fairhurst's contention that he is entitled to a new hearing because the Board failed to address critical issues is unsupported. We are satisfied the Board's findings for denying parole are amply supported by sufficient credible evidence in the record.

Fairhurst argues for the first time on appeal that the Board's consideration of his numerous infractions under N.J.A.C. 10A:71-3.11(b)(1) to (2) constituted

double jeopardy and is fundamentally unfair because he had already been sanctioned for committing the institutional offenses. We generally decline to consider issues not presented below when an opportunity for such a presentation is available unless the questions raised on appeal concern jurisdiction or matters of great public interest. State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Nevertheless, for the sake of completeness, we review Fairhurst's argument.

"The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, protects against the reprosecution of a person for the same offense after an acquittal or conviction, and against multiple criminal punishments for the same offense." State v. Black, 153 N.J. 438, 443 (1998) (citing Brown v. Ohio, 432 U.S. 161, 165 (1977)), abrogated on other grounds by State v. Hernandez, 208 N.J. 24 (2011). The Fifth Amendment's Double Jeopardy Clause "provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" State v. Miles, 229 N.J. 83, 92 (2017) (quoting U.S. Const. amend. V). Similarly, under the New Jersey Constitution, "No person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, ¶ 11; see Miles, 229 N.J. at 92 ("This Court has consistently interpreted the State

Constitution's double-jeopardy protection as coextensive with the guarantee of the federal Constitution."). "The Double Jeopardy Clause's prohibition against multiple punishments clearly protects against a second criminal penalty being imposed in a second criminal prosecution for the same offense. It is not generally implicated by penalties imposed in civil and administrative proceedings." Black, 153 N.J. at 443.

We have elucidated that a "criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 583 (App. Div. 1999). "In contrast, the prison disciplinary process determines whether an inmate has violated the conditions of his incarceration and it is designed to advance the remedial goal of maintaining institutional order and security." Ibid.

Fairhurst's adjudicated institutional infractions were distinct from criminal prosecution. In reviewing his parole and FET, the Board's consideration of his infractions was statutorily permitted by N.J.A.C. 10A:71-2.10(a). Thus, consideration of the twenty-seven infractions was neither a violation of the double jeopardy clause nor fundamentally unfair. See State v. Melvin, 248 N.J. 321, 348 (2021) (noting that the doctrine of fundamental fairness is sparingly applied "to protect citizens generally against unjust and

arbitrary governmental action" (quoting State v. Saavedra, 222 N.J. 39, 67 (2015))). We further observe the Board considered the aggregate of all pertinent factors in its decision, including those set forth in N.J.A.C. 10A:71-3.11(b).

In summary, we conclude the Board's decision to deny parole and impose a lengthier FET pursuant to N.J.A.C. 10A:71-3.21(d) was not arbitrary, capricious, or unreasonable, and "[wa]s supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). To the extent not addressed, Fairhurst's remaining arguments lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1461-22